Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202) 741-3636 and destroy the original message and all copies.

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                        Thu, Nov 19, 2015 at 8:51 PM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>
Cc: Lori Kels <lkels@mfa.gwu.edu>, "Victoria H. Anderson" <vhanderson@mfa.gwu.edu>

Dear Dr. Catapano,

I am very glad that we had our meeting today. Dr. Berger stated that I would have 14 days from a decision to hold me back from PGY3 or having to repeat a rotation. My understanding is that decision was not made yet. I think you were going to try to find out if I do have to make up PHP. I mentioned that the idea to have me repeat PHP was made before I went on medical leave. Hopefully, I will have shown that I did enough on PHP to not have to do the month over again. I would like it be taken in consideration that the week Dr. Malik was on vacation, the replacement physician felt uncomfortable working with residents and asked me to go to another site. This was out of my control.

I had also sent an email to Jason to inform him when I had appointments this month so that I would not be on call on those days. I can forward the email so that if my call·schedule does need to be changed it is not interfering with the days I requested to not be on call. Also, if it is okay with you, can I ask Tory to be my point person? Dr. Berger and I talked about having one main person be the contact person. As you mentioned, if I get sick during the night, for example, I will still need inform those affected. I will cc Tory and hopefully she will be able to tell me if the protocol I followed was acceptable. I appreciate the time you took with me this afternoon. I hope that things start turning around for the better. I am willing to do what it takes to make it work as long as those things are fair and explained to me.

Best,
**Stephanie**
[Quoted text hidden]
--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

---

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                        Wed, Nov 25, 2015 at 10:34 AM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: Lori Kels <lkels@mfa.gwu.edu>, "Victoria H. Anderson" <vhanderson@mfa.gwu.edu>

Hi Stephanie,

Thanks for all of the effort you are putting into your work, your scheduling, and your communications with us. It's obvious you are trying (as always) to make improvements.

With regard to your promotion to the PGY3 year, it is definite that you will not be ready on July 1, 2016, and that is stated in the Letter of Deficiency I gave you last Thursday. I know you also have an email from Dr. Collins from last Friday stating you will have to retake her course. I don't know if you have it in writing from Dr. Griffith, but from my communication with him, my understanding is that you will have to retake his course as well. Let me know if you have any questions about that.

As we discussed, we will need to work out a system for your absences, including a point person (probably me) to help you. (Also, as we discussed, this wouldn't be for last minute absences, and wouldn't be a substitute for you contacting your supervisors directly.) I will work on outlining a plan for that next week.

Take good care of yourself, and I hope you have a good holiday. We will talk again next week.

**DR. CATAPANO DECLARATION
EXHIBIT #151**

Lisa Catapano, MD, PhD

Director, Residency Training Program

Associate Professor of Psychiatry

Department of Psychiatry

George Washington University

2120 L Street NW

Washington DC 20037

(202) 741-2886


**From:** Stephanie Waggel [mailto:swaggel@gwmail.gwu.edu]
**Sent:** Thursday, November 19, 2015 8:51 PM
**To:** Lisa Catapano
**Cc:** Lori Keis; Victoria H. Anderson
**Subject:** Re: summary of our meeting

[Quoted text hidden]
[Quoted text hidden]

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                    Wed, Nov 25, 2015 at 4:39 PM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>
Cc: "Victoria H. Anderson" <vhanderson@mfa.gwu.edu>

Dear Dr. Catapano,

Thank you for your reply and helping me find a point person. During our meeting on Thursday Nov, 19 you mentioned I speak with Dr. Griffith about my progress in his class. I stopped by his office before leaving the MFA and he said that as the exams are cumulative, I can demonstrate my neuroscience understanding by doing well on the next exam which is December 17. I remember sharing my excitement about this with you before leaving the MFA. Has something changed since then?

My specific time-sensitive question about Dr. Collin's class is, have I officially failed it despite being notified one week prior that I was passing and that Dr. Collin's has not graded my final paper?

My LOD states that I am to meet with Dr. Keis within one week of Nov, 19. On Nov 20 I contacted Dr. Keis, but she has not had a chance to meet with me yet. She said she'll get back to me next week. Is there a way to avoid the adverse consequences of not meeting with her in the 7 days?


Thank you,
Stephanie
[Quoted text hidden]

---

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                    Mon, Nov 30, 2015 at 2:37 PM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: "Victoria H. Anderson" <vhanderson@mfa.gwu.edu>

Hi Stephanie,

Regarding Dr. Griffith's course, what he told me after he spoke to you on November 19, and what he reiterated in his email to you today, is that he is allowing you to take the Dec 17 exam, but because you failed the first two exams, you will need to at least retake the first section of his course. He will have to decide, after the next exam, whether you will continue in his course for the rest of this year.

Regarding Dr. Collins's course, her email from November 25 states that you did not pass her course, and will have to retake it next year.  This means you will not get a supervisor or therapy patient this year, and cannot take Dr. Zinner's course or T-group.

Just to make sure everything's clear regarding your didactic schedule, for the next few weeks you will continue to be in Dr. Griffith's course, and continue in the Global Mental Health course.

Regarding your meeting with Dr. Keis, I understand that you attempted to contact her last week, and got a response from her on Wednesday.  Although you were not able to meet with her within one week, I know that you made a significant effort and that she got back to you to say she got your message. You will not be penalized for the fact that you have not met with her yet.

Please let me know if you have any questions about any of the above.

Take care,


Lisa Catapano, MD, PhD

Director, Residency Training Program

Associate Professor of Psychiatry

Department of Psychiatry

George Washington University

2120 L Street NW

Washington DC 20037

(202) 741-2886


**From:** Stephanie Waggel [mailto:swaggel@gwmail.gwu.edu]
**Sent:** Wednesday, November 25, 2015 4:39 PM
**To:** Lisa Catapano
**Cc:** Victoria H. Anderson

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

**Victoria H. Anderson**

| | |
|---|---|
| om: | Stephanie Waggel <sewaggel@gmail.com> |
| ent: | Thursday, November 19, 2015 8:58 PM |
| To: | Lisa Catapano; Victoria H. Anderson |
| Subject: | Fwd: appointments |

Dear Dr. Catapano and Tory,

I am not sure if there is going to be a call schedule change but I wanted to give you the information I provided to Jason in October regarding November. I am happy to take call on any other days.


---------- Forwarded message ----------
From: **Stephanie Waggel** <sewaggel@gmail.com>
Date: Wed, Oct 21, 2015 at 10:58 PM
Subject: appointments
To: Jason Emejuru <jemejuru@gmail.com>


I have appointments Nov 3rd, 10th, 17th, 19th and 24th. I have already made arrangements to go home 26th-28th. This is something that I need to do as I have legal documents to sign for my car inspection and insurance that I can only do in PA. It would also be nice to see my mother. I do not know exactly when my other appointment will be as it depends on the results of my recent tests. Based on my previous call schedule, it did
   t matter what day of the week my follow up appointments were as previously I was only scheduled on the weekend.

**Victoria H. Anderson**

| | |
|---|---|
| om: | Lisa Catapano <lisacatapano@gmail.com> |
| Sent: | Thursday, December 17, 2015 8:57 PM |
| To: | Victoria H. Anderson |
| Subject: | Fwd: Stephanie |

Sent from my iPhone

Begin forwarded message:

> **From:** Lisa Catapano <lisacatapano@gmail.com>
> **Date:** November 19, 2015 at 10:23:13 PM EST
> **To:** "Dr. Cheryl Collins" <cherylcollins.md@verizon.net>
> **Subject: Re: Stephanie**
>
> Thanks Cheryl ...
> I look forward to speaking tomorrow ....
> Lisa
>
> Sent from my iPhone
>
> On Nov 19, 2015, at 9:24 PM, Dr. Cheryl Collins <cherylcollins.md@verizon.net> wrote:
>
>> HI:
>> I sent S. an email suggesting she repeat the course and she and I then
>> talked on the phone. She is claiming that she is not repeating the 2nd
>> year, and that if she has to repeat my course it will hold her back. (I feel in
>> the middle of something that perhaps I shouldn't be.) Optimally I think she
>> should repeat the course, however if you think that getting her a
>> supervisor to remediate the course i sufficient, I will ask Rosa if she will do
>> that. I will call you tomorrow-just wanted to give you a heads up.
>>
>> Sincerely,
>> Cheryl Collins, M.D.
>> Adult, Child & Adolescent Psychiatry and Psychoanalysis
>> 4000 Albemarle Street NW
>> Washington, D.C.
>> FYI: I check emails Monday-Thursday; 7:30pm-8:30 pm and Friday 5:30pm-6:30 pm. If you
>> have an urgent issue, please call the office, at (202) 537-7045 or # 911 if emergent. Thank
>> you.
>> CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual or entity
>> to which it is addressed and may contain information that is confidential. If the reader of this
>> message is not the intended recipient, please let me know and delete this email.

**DR. CATAPANO DECLARATION
EXHIBIT #153**

GWU 001531

## Victoria H. Anderson

| | |
|---|---|
| **om:** | Stephanie Waggel <swaggel@gwmail.gwu.edu> |
| **Sent:** | Thursday, November 19, 2015 10:00 PM |
| **To:** | Victoria H. Anderson; Lisa Catapano |
| **Subject:** | Dr Collins Recent Feedback |

Dear Dr. Catapano and Tory,

In the last feedback I received from Dr. Collins on Nov 7, she states that she "will be assigning me a supervisor soon." I had not heard otherwise from her until today about an hour ago. I asked her what changed from then until now. She states that did not know if I was going to be in class and was upset that I did not inform her of my recent absences and I also missed class prior. I hope it can be explained to her that my absence was FMLA time and my more recent one was very complicated. My understanding was that the need to repeat this class would result in me going on technically as a PGY3 but redo the rotations of PGY2. Is this correct? I hope very much this can be sorted out.

Thank you,
Stephanie

Stephanie E. Waggel, M.D., M.S.
ie George Washington University Hospital

**DR. CATAPANO DECLARATION**
**EXHIBIT #154**                    GWU 001530

On Thursday, November 19, 2015, Jeffrey Berger <jberger@mfa.gwu.edu> wrote:
Stephanie:

Please note that there are a few things that you wrote that don't jive with my intent from our meeting:
1. You should not be so forceful in dictating your plans with Dr. Catapano.  Your tone should soften.

2. Please do not reference your attorney going forward, particularly to the people in your Department.  It does not make for a safe working environment. It is your choice to continue to pursue this avenue.

3. Your point in number 5 is not consistent with our conversation.  You may appeal the decision to delay your promotion - as noted in the most recent Letter of Deficiency - to the PGY3 level, or a decision to deny credit for a rotation (as may be the case that you mentioned at our meeting) according to our Academic Improvement Policy.  If you choose to appeal, we will follow our GME policy.  You can easily find this policy on the website.  Note that there is a 14 day time limit to appeal following notification.

4. Point 7 is inconsistent with point 4.

5. I believe you misunderstood my point about feedback.  I stated that trainees get feedback all the time and don't necessarily appreciate the value of the feedback.  Later practice will naturally incorporate feedback (best-practice) from all of the faculty.  I did not suggest that the current feedback you were getting was in any way deficient.  On the contrary, I was suggesting that it is up to you, the trainee, to extract value from your interactions with your faculty and advocate for yourself as an adult learner.

6. A decision about "buddy call" is Dr. Catapano's to make.  I made the recommendation to her.  The rest of your comments are not necessary for your continued development.

I really had a good feeling from our meeting and I know that many members of your Department believe that you can succeed in completing the program.  Remember that we are investing in you - delaying promotion or asking you to repeat a course are significant costs that reflect our commitment to your success.  Doing your part is going to require some effort, and I am hopeful that you will succeed.

-Jeff
Assoc. Dean for GME

---

**From:** Waggel, Stephanie <swaggel@email.gwu.edu>
**Sent:** Wednesday, November 18, 2015 7:17 PM
**To:** Lisa Catapano
**Cc:** Jeffrey Berger
**Subject:** meeting tomorrow

Dear Dr. Catapano,



DR. CATAPANO DECLARATION
EXHIBIT #155

GWU 003504

10/19/2017                          The George Washington University Mail - My course


Header Page 232 of 466.

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON, DC

**Stephanie Waggel <swaggel@gwmail.gwu.edu>**

---

## My course
2 messages

---

**Dr. Cheryl Collins** <cherylcollins.md@verizon.net>                    Fri, Nov 20, 2015 at 8:58 AM
To: swaggel@gwmail.gwu.edu, lisacatapano@gmail.com

 Hi Stephanie
The decision has been made that you will be repeating my course beginning next July as other
remediation options are not available. While that may be difficult to take in now, I trust that by
July you will be ready to learn and it will be a more rewarding experience. Any other questions
about this can be directed to Dr. Catapano. I will see you in July.
Sincerely,
Cheryl Collins, M.D.
Adult, Child & Adolescent Psychiatry and Psychoanalysis
4000 Albemarle Street NW
Washington, D.C.
**FYI:  I check emails Monday-Thursday; 7:30pm-8:30 pm and Friday 5:30pm-6:30 pm. If you have an urgent issue, please
call the office, at (202) 537-7045 or # 911 if emergent. Thank you.**
CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may
contain information that is confidential. If the reader of this message is not the intended recipient, please let me know and delete
this email.

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                          Fri, Nov 20, 2015 at 2:00 PM
To: Me <sewaggel@gmail.com>

 [Quoted text hidden]
--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

---

Stephanie Waggel Supp. Prod. (Oct.) 232 of 466.

**DR. CATAPANO DECLARATION
EXHIBIT #156**

| | |
|---|---|
| **From:** | Jeffrey Berger [jberger@mfa.gwu.edu] |
| **Sent:** | Friday, November 20, 2015 5:07 PM |
| **To:** | Waggel, Stephanie |
| **Cc:** | Lisa Catapano; Mary Tucker |
| **Subject:** | Re: meeting tomorrow |

Please note that we reviewed MedHub.

The system is set up for confidential evaluations of faculty.

Hence, when an evaluation is completed, the faculty will receive it without a name attached and they will not receive an evaluation until at least 3 have accumulated.

We also noted in the system that you have not completed an evaluation in MedHub for the physician in question previously.

I hope that you find this information helpful and know that, going forward, your submissions will be protected if you are using the MedHub system and not writing comments about specific interactions that will unblind the evaluation.

-Jeff

---

**From:** Jeffrey Berger
**Sent:** Friday, November 20, 2015 5:03 PM
**To:** Waggel, Stephanie
**Cc:** Lisa Catapano; Mary Tucker
**Subject:** Re: meeting tomorrow

Sounds good.   -Jeff

---

**From:** Waggel, Stephanie <swaggel@email.gwu.edu>
**Sent:** Friday, November 20, 2015 4:42 PM
**To:** Jeffrey Berger
**Cc:** Lisa Catapano; Mary Tucker
**Subject:** Re: meeting tomorrow

Dear Dr. Berger,

Thank you for clarifying this. I apologize for sounding forceful. I just meant to give my suggestions. I didn't mean to imply you thought the feedback I was receiving was deficient. That was my opinion. Thank you again for making the time for our meeting. I am hopeful and look forward to positive changes. Please keep me up to date when you have a chance. Have a great weekend.

Best,
Stephanie



**DR. CATAPANO DECLARATION
EXHIBIT #157**

GWU 003503



Header Page 188 of 466.
WASHINGTON
UNIVERSITY
WASHINGTON, DC

Stephanie Waggel <swaggel@gwmail.gwu.edu>

## Follow up Nov 19 conversation
3 messages

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                     Wed, Nov 25, 2015 at 11:20 AM
To: jgriffith@mfa.gwu.edu

Dear Dr. Griffith,

Good morning. After my meeting on Thursday, Nov 19th with Dr. Catapano, I stopped by your office around 5pm and asked if I could make up the previous exams in your neuroscience class. My understanding is that you stated that that was not necessary and that I should focus on doing well on the December exam as it is built on the prior material. As the tests are cumulative, doing well on the December exam would give me the chance to show I went back to build on information from the beginning. Has there been any change to this since we last spoke? Thank you for your time and have a great Thanksgiving.

Best,
Stephanie

--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

**James Griffith** <jgriffith@mfa.gwu.edu>                     Wed, Nov 25, 2015 at 4:03 PM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: Lisa Catapano <lcatapano@mfa.gwu.edu>

Stephanie, that is not what I said. I'll clarify and explain & also cc to Dr. Catapano so there won't be confusion. The first section of the year-long clinical neurosciences seminar provides the basic science foundation not only for psychopharmacology, but for much of what you will be taught during residency about use of language and relationships in psychotherapy in several other seminars. You missed many of those sessions and also scored 33 on each of the two examinations, which indicated you did not acquire the needed level of knowledge needed to move forward. You need to repeat the course next year, which is consistent with what residents have been required to do in the past when they did not show evidence of having learned the material.

Stephanie Waggel Supp. Prod. (Oct.) 188 of 466.

DR. CATAPANO DECLARATION
EXHIBIT #158

Header Page 189 of 466.

The fundamental issue is one of accountability to your future patients. You need to demonstrate that you have the knowledge and skills needed to provide competent and effective care for your future patients. This is why it matters that you learn this material. It likely is something you will later appreciate for you to re-do the course and learn the material well. It is okay for you to take the Dec 17 exam on psychotic disorders and their treatment, but that does not mean you should not re-take at last the summer section next year and possibly the course as a whole.

Best wishes,

Griff

James L. Griffith, M.D.
Leon M. Yochelson Professor and Chair
Dept. of Psychiatry and Behavioral Sciences
2120 L Street, N.W.
Suite 600
Washington, DC 20037
Phone:    (202) 741-2879
FAX:       (202) 741-2891
E-Mail:    jgriffith@mfa.gwu.edu
Web:      www.gwupsychiatry.org

**From:** Stephanie Waggel <swaggel@gwmail.gwu.edu>
**Sent:** Wednesday, November 25, 2015 11:20 AM
**To:** James Griffith
**Subject:** Follow up Nov 19 conversation

[Quoted text hidden]

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202) 741-3636 and destroy the original message and all copies.

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                    Wed, Nov 25, 2015 at 5:52 PM
To: Me <sewaggel@gmail.com>

---------- Forwarded message ----------
From: **James Griffith** <jgriffith@mfa.gwu.edu>
Date: Wednesday, November 25, 2015
Subject: Follow up Nov 19 conversation
[Quoted text hidden]

Stephanie Waggel Supp. Prod. (Oct.) 189 of 466.

Header Page 169 of 466.



Stephanie Waggel <swaggel@gwmail.gwu.edu>

---

## discussion today

2 messages

---

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                    Thu, Dec 10, 2015 at 1:03 PM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>

Stephanie,

Per our discussion over the last few minutes, this email is to confirm that you will not be punished for missing the first
session of Dr. Zinner's class, since we have told you that you are not allowed to participate.

Lisa Catapano, MD, PhD

Director, Residency Training Program

Associate Professor of Psychiatry

Department of Psychiatry

George Washington University

2120 L Street NW

Washington DC 20037

(202) 741-2886

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of
this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for
delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202)
741-3636 and destroy the original message and all copies.

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>               Thu, Dec 10, 2015 at 3:00 PM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>

Thank you
[Quoted text hidden]
--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

Stephanie Waggel Supp. Prod. (Oct.) 169 of 466.

**DR. CATAPANO DECLARATION
EXHIBIT #159**



**PSYCHIATRY & BEHAVIORAL SCIENCES**
at The GW Medical Faculty Associates

2120 L Street, NW, Suite 600
Washington, DC 20037
phone: 202.741.2900 fax: 202.741.2891
www.gwupsychiatry.org

HAND DELIVERED

Stephanie Waggel, MD

Department of Psychiatry

The George Washington School of Medicine & Health Sciences

Re: Letter of Deficiency, Notification of Reportable Action

December 10, 2015

Dear Dr. Waggel:

This Letter of Deficiency follows your earlier Letter of Deficiency dated 11/19/15, in which you were informed that based on insufficient competencies in Patient Care, Interpersonal Communication Skills and Systems-Based Practice, that you will not be promoted to the PGYIII year on July 1, 2016. You are receiving this current Letter of Deficiency under the current policy for academic improvement for Graduate Medical Education at the George Washington University. According to a review of your clinical standing by the Department of Psychiatry Clinical Competency Committee (CCC), you have shown deficiency in the competency of Medical Knowledge.

As per Dr. Cheryl Collins's email to you on November 25, 2015, as well as phone conversations between Dr. Collins and you on November 24 and November 25, 2015, you did not demonstrate sufficient competency in her Psychodynamic Theory course to pass it and to progress to having an individual psychotherapy patient assigned to you this month. As a result, you will not move on to Dr. Zinner's Psychodynamic Psychotherapy course. Dr. Zinner does not permit residents who have not demonstrated sufficient competency in Psychodynamic Theory to participate in his course, part of which includes the assignment of psychotherapy patients.

Additionally, in Dr. Griffith's Neuroscience course, you received failing grades of 33 on both of the first two exams. In Dr. Griffith's email to you dated November 25, 2015, he stated that you "did not acquire the needed level of knowledge needed to move forward. You need to repeat the course next year, which is consistent with what residents have been required to do in the past when they did not show evidence of having learned the material."

Consequently, you will be required to repeat Dr. Collins's Psychodynamic Theory course next year. If you pass the course at that time, you will be permitted to participate in Dr. Zinner's Psychodynamic Psychotherapy course, and will be assigned a psychotherapy patient and a supervisor.

1



DR. CATAPANO DECLARATION
EXHIBIT #160

GWU 001125

In the meantime, if you would like to further your understanding of psychodynamic theory and better prepare yourself to be successful in Dr. Collins's class next year, you are welcome to contact her and request extra reading materials.

You will also be required to repeat at least the first part of his course next year in which the content of the first two exams is covered. Pursuant to your conversation with Dr. Griffith on November 19, 2015, he is allowing you to take the next exam on December 17 before determining whether you may continue in the class this year, or withdraw from the class and repeat it in its entirety next year.

The Medical Knowledge deficiencies outlined above further demonstrate that you are not prepared to be promoted to the PGYIII year in July, 2016. In accordance with your Letter of Deficiency dated November 19, 2015, , you will be required to continue in PGYII clinical rotations when the next academic year starts, and, as referenced above, repeat the PGYII didactic courses. You will be eligible to be promoted to PGYIII standing at any time during the academic year, once the Clinical Competency Committee determines that you have satisfactorily completed all of your PGYII rotations, and, at least, successfully repeated both Dr. Collins's Psychodynamic Theory course and the first section of Dr. Griffith's Neurobiology course.

Please note that, given the way our program is structured, any resident who is promoted to PGYIII standing significantly after the academic year has started is required to continue in inpatient rotations until the following July.

The GW Academic Improvement Policy can be found at the following link: http://smhs.gwu.edu/sites/default/files/GW%20GME%20Academic%20Improvment%20Policy.jb.6.27.pdf.

According to this policy, if you wish to appeal your non-promotion as set forth in your Letter of Deficiency dated November 19, 2015, your appeal must be submitted no later than December 11, 2015. The appeal of the course failures must be submitted no later than 14 days after receipt of this Letter.

A review and update of your progress will be reported at the next CCC meeting and will be reviewed in your next Semi-Annual Meeting with me. If you have any further questions, please feel free to discuss them with me.

Lisa A. Catapano, MD, PhD

Director, Psychiatry Residency Program

GWU 001126

2/13/2017                          The George Washington University Mail – RE: call from the ED

 THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON, DC

Stephanie Waggel <swaggel@gwmail.gwu.edu>

## RE: call from the ED
1 message

**Lori Kels <lkels@mfa.gwu.edu>**                                   Wed, Dec 30, 2015 at 3:51 PM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: "Victoria H. Anderson" <vhanderson@mfa.gwu.edu>, Lisa Catapano <lcatapano@mfa.gwu.edu>, Jason
<jemejuru@gmail.com>

Hi Stephanie,

I apologize that the updated call schedule was distributed before you received my email from yesterday notifying you
of the change.  It was my intention that you would know about the change before the updated schedule was posted.
In the future, I will do my best to be sure you are notified of any changes affecting you before updated schedules are
posted.

Also, please be sure to reach me at lkels@mfa.gwu.edu for any email communications.

Best wishes,

Dr. Kels

**From:** Jeffrey Berger
**Sent:** Wednesday, December 30, 2015 3:25 PM
**To:** Lori Kels <lkels@mfa.gwu.edu>
**Subject:** Fw: call from the ED

Dear Dr. Catapano, Dr. Kels, Jason, and Tory,

Good afternoon. Yesterday at 11:17am I sent you an email asking why the PGY2 and 3 classes were made aware of changes to my call
schedule when I, however, was not informed. I was scheduled to be on call Jan 5th, 11th, 18th, and 28th and my classmates informed
me administration sent emails stating this was no longer true. My classmates noticed that I was not copied on the emails. If it was not
for my close relationship with my fellow classmates and their concern for my well-being, I would not currently not be aware of the fact
that I was taken out of the call pool. I would appreciate the answers to the following questions:

**DR. CATAPANO DECLARATION
EXHIBIT #161**

 **Gmail**                    Baiju Gandhi <baiju.gandhi@gmail.com>

## Assignment Complete

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                    Tue, Jan 5, 2016 at 7:58 AM
To: Baiju Gandhi <baiju.gandhi@gmail.com>
Cc: Lori Kels <lorikels@gmail.com>, Jason Emejuru <jemejuru@gmail.com>

Dear Dr. Gandhi,

Thank you for taking the time to listen to my patient presentations on Sunday. In your feedback you stated that they were organized and provided pertinent information. Is there any more feedback you would like to add? I have attached my essay where I was tasked to: describe management strategies and alternatives to such strategies. I was also to speak on "code strongs" and administrative discharges."  Thank you for your time.

Sincerely,
Stephanie
—
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

📄 **Waggel Management of Patient Agression Assignment.docx**
23K

 **DR. CATAPANO DECLARATION EXHIBIT #162**          GWU 003516

Management of Patient Aggression

Stephanie Waggel, MD 1/4/16

Health care institutions are reporting increasing rates of crime, including assault, rape and homicide. The Sentinel Event Database indicates significant increases in reports of these events with the greatest number of reports in the last three years.  The Bureau of Labor Statistics (BLS) stated healthcare workers were the victims of approximately 11,370 assaults by persons and shown to be increasing. JCAHO noted in 62 percent of the events, most notably problems in the areas of policy and procedure development and implementation.  My suggestions for improvement of agitation include accessible information on DC law and individual rights, accurate reporting, identifying potentially violent individuals, clear protocol, de-escalation training, and counseling programs for employees.

Hospital violence is a serious and increasing problem. In a 2014 survey, almost 80% of nurses reported being attacked on the job last year. According to data from the BLS, attacks on health-care workers make up 70 percent of all nonfatal workplace assaults causing days away from work. Participants from a hospital system employing more than 5,000 nurses researched the incidence of workplace violence against nurses perpetrated by patients or visitors in their hospital system. A Violence Surveillance Study from 2011 by the Emergency Nurses Association Institute for Emergency Nursing Research (ENAEDVS ) showed the overall frequency of physical violence and verbal abuse during a seven-day period was more than half (54.5%) across all rounds.  We have similar statistics in this area.  I have personally witnessed at least five assaults. According to the GW Hatchet, Five of the 17 on-campus sexual assaults reported to city police in the last four years took place in GWU Hospital.  Fortunately, GW Annual Security and Fire Safety Report stated that a person reporting a crime to GW police has the right to report the crime to the Metropolitan Police Department.

According to the Joint Commission: Accreditation, Health Care, Certification (JCAHO), individuals should be reporting the crime to appropriate law enforcement officers.  The George Washington University Hospital is in the District of Columbia's Second Police District.  It is, at times, difficult for hospital employees to understand the laws. In DC, General Assault is usually defined as the unwanted touching of another person.  One does not have to be aggressive towards the other person for it to be considered assult.  Aggravated assault, a felony charge, is one where one knowingly or purposefully caused serious bodily injury to someone, or engaged in conduct that put others at extreme risk of serious injury and the action caused such injury. This charge is punishable by up to 10 years in prison. In October, GWU hospital security gave a presentation that overviewed their Security department. They also had representative from the Metropolitan Police Department speak. According to GWU police crime logs, criminal activity was reported at the hospital to the GW police and an outside authority a two weeks after the

GWU 003517

presentation.  The Call Manual states that if a Six South Patient is needs to be discharged to the police, a document must be placed in the front of the patients chart stating the police must be called before discharge with a contact name and phone number.  More awareness of this policy is necessary to help employees follow the protocol.  An administrative discharge a discharge by a hospital administrator that is likely to result in a significance improvement. In most states this is a matter of condition, improvement or when release would be in the patient's best interest or for the interest of the hospital. The most current Psychiatry Resident Official Call Manual, 2013-2014 Policy states one fact about an administrative discharge and that it must be discussed with an attending.  Including information on what it is and how to handle it in the resident documents would, therefore, be beneficial.

Accurate incident reporting helps hospitals identify potential issues and take steps to remedy them. ENAEDVS shows hospitals with mandatory reporting policies experienced half the rate of physical violence as hospitals without reporting policies. The majority of the participants who were victims of workplace violence did not file a formal report for the physical violence (65.6%) Most participants who experienced physical violence, however, tended to notify security personnel (65.7%), an immediate supervisor (64.2%), other emergency nurses (63.2%), and/or emergency physicians (54.6%). The reporting of most sentinel events to The Joint Commission is voluntary and represents only a small proportion of actual events. In 2014, there were only 5 reports of self-inflicted injury and only 85 over ten years.  However, there were 82 suicides reported 2014 and over 900 reports of suicide over ten years. It is possible that reporting does not occur until it is too late.  The ENAEDVS report showed that 46.7% of the assault perpetrators had action taken against them. The National Safety Presentation 2016 states that a higher presence of reporting policies were associated with lower odds of physical violence and verbal abuse. Hospitals with no reporting policy had an 18.3% physical violence rate; hospitals with a non-zero tolerance reporting policy had a 13.7% physical violence rate. The lowest rate was in settings with a zero-tolerance reporting policy. To make better use of this aggression management strategy, clear instructions on incident reporting should be made available to staff and an accepting, non-punitive environment should be maintained.

JCAHO states that those at most at risk for a sentinel event such as suicide should be identified. When I was an intern, I created a standardized chart to be included in the sign-out when the interns sign out to the night resident which could be beneficial in this way.  When interns can identify which of their patients have a high suicide, agitation, and aggression risk, they receive the appropriate attention. These patients should be identified based on past behaviors, collateral, or exhibited warning behaviors. The ENAEDVS report showed physical violence rarely occurred without verbal abuse.  My chart was presented to all residents last year and was formally accepted into the sign-out.

Researchers at the National Safety Presentation 2016 suggest a way to decrease assault may be to give the perpetrator a warning. The ENAEDVS report showed less than 20% of perpetrators were reported to have been given a warning before assault.  Since last year, I have drafted many

GWU 003518

"Behavior Contracts" that specifically warn the patient what they have done that is not acceptable and how they can avoid repeating it. I also inform them of the punishments that may occur if they break another rule. The contract might say, for example, if you punch the wall again security will be called. I find that this greatly reduces the number of violent outbursts and maintains clarity, and many of the nursing assault studies concur.

When a situation with a patient has the potential to compromise imminent safety, a "code strong" is called. The most current Psychiatry Resident Official Call Manual, 2013-2014 Policy document, and the On Call Expectations document state the following about Code Strongs: They are run by psych residents and inters and they are the highest priority. The resident/intern must put in orders if the code is on a Six South patient, watch for patient breathing, and write a note on the incident. It would befit patient aggression management if information on these terms were clear and consistent. This could be accomplished by including possible scenarios and corresponding protocol and having a "mock code strong."

JCAHO states that counseling programs for employees who become victims of workplace crime or violence should be in place at the hospital. The Assault Support Team shows that assault victims who have participated in the support program feel enthusiasm, commitment, and relief. The availability of such programs has become a healthy alternative to dealing with the trauma one's self. I have attempted to implement such a program through hospital risk management, the GME and the psychiatry residency program administrators.

In summary, management strategies for decreasing patient aggression should be a main focus for improvement, especially given the increased rate of incidents. Some feel authority figures do not take aggression seriously. Overall, nurses in the ENAEDVS study believed that violence was endemic to their workplace and that both limited recognition of cues indicating a high-risk person or environment and a culture of acceptance of violence were barriers to progression. My suggestions for improvement include accessible information on DC law and individual rights, accurate reporting, clear communication about each patient's risk for aggression, warning and communication with the aggressor, and counseling programs for employees.

**Allen Dyer**

**From:** Lisa Catapano
**Sent:** Tuesday, January 05, 2016 2:59 PM
**To:** James Griffith; Lori Kels; Allen Dyer
**Subject:** FW: Re: Stephanie Waggel

Hi Lori, Allen and Griff,
This email is to document my conversation with Dr. Sarani, ombudsman, today, and keep you all in the loop regarding Stephanie. Apparently, on December 29, the day that Jason sent out an email to the residents with the latest call schedule changes (which included removing Stephanie from the call schedule until she is able to take independent call), Stephanie presented to the ER (as a patient) with panic sx. She was seen by Colleen Roche, and told her that her sx were precipitated by this email about being taken out of the call schedule, in the context of having no information that there were any concerns about her clinical performance. She said she was very stressed because she has tried repeatedly to meet with me and Lori, to no avail, to get some information about her standing in the residency. Dr. Roche advised her to speak to Dr. Sarani, as the ombudsman, and when they met she repeated the above concerns to him. She told him that she has received no formal feedback or anything in writing (such as a Letter of Deficiency) letting her know where she stands, and she is anxious about this because she might be held back next year and she doesn't know why.
In our conversation this afternoon, I let Dr. Sarani know that Stephanie has received four Letters of Deficiency over the last 6 months, and that she is in the process of appealing one of them. She has had multiple meetings with me and with Dr. Berger, and in the process of the appeal, the GME office has reviewed all of our records and communications with/regarding her. Dr. Sarani let me know that his next step is to confirm the above with Jeff Berger, and if he is satisfied that we have followed the appropriate process for informing Stephanie of her deficiencies, then he will drop the matter from his end.
I will keep you all updated.


Lisa Catapano, MD, PhD
Director, Residency Training Program
Associate Professor of Psychiatry
Department of Psychiatry
George Washington University
2120 L Street NW
Washington DC 20037
(202) 741-2886

**From:** Babak Sarani
**Sent:** Tuesday, December 29, 2015 4:44 PM
**To:** Lisa Catapano
**Subject:** Re: Stephanie Waggel

Hi Lisa. I am one of the ombudsmen for the school of medicine. I spoke with Stephanie Waggel today in the ER – she was being evaluated for a panic/anxiety attack. Can we meet on Monday 1/4 to discuss her situation? I am free between 9am and 3pm. Also, my direct cell phone is 215-260-8551 if you would like to speak by phone before then.


Thanks

Babak Sarani, MD, FACS, FCCM
Associate Professor of Surgery
Director, Center for Trauma and Critical Care
Director, George Washington Transfer Center



**DR. CATAPANO DECLARATION**
**EXHIBIT #163**

GWU 002843

**Victoria H. Anderson**

| | |
|---|---|
| From: | John Zinner <jzinner@erols.com> |
| Sent: | Monday, January 11, 2016 3:14 PM |
| To: | Lisa Catapano |
| Subject: | Re: SW last Thursday |

Hi Lisa- Your account is accurate with a few modifications. When I arrived in class, Stephanie was filling out evaluation forms as were several other PGY2's. They finished up in order to be ready to start the class but Stephanie kept writing. I asked her if she was ready to "wrap it up" so that the class could start. That's when she told me I could go ahead and start the class. She had it in her mind that she was now permitted to take the class because she was "on the list." A photo list of the PGY2 group was on the table. I told her I could not begin the class because she was not in the class and she replied that you had left it up to me to decide whether she could take the seminar. The idea was that you were OK with that if I was OK with it as well. I told her that she could not remain that day and she needed to take the issue up with you. I knew you had not given her any permission and that she was making that up. She left, slowly, and a few minutes texted TJ saying, I think, that you had given her permission to be in the class if I agreed to that. I think she wrote that she had gone to see you but I am not positive.
That's what I can remember. I'm sorry you have to go through all this.
Starting Wednesday eve, I'll be in NYC at the Winter Meetings of the American Psychoanalytic Association, and I won't have email access. I'll be back on Saturday eve.

Warm regards, John

On 1/11/2016 1:58 PM, Lisa Catapano wrote:

Hi John,
Thanks for stopping by to talk with me last Thursday. I'd like to document what you told me. You said that Stephanie Waggel was already in the room when you arrived to begin your class on January 7. You asked her if she was finished with what she was doing and ready to leave so that you could begin class, and she said you should go ahead and start even though she was still there. You explained that you could not start the class with her there, because she is not taking the class. She then said that she WAS taking the class, because, she said, I had told her that she was allowed to if she wanted to. She told you that I had said it was up to her whether to take the class or not. You said that was not your understanding, and there was some back and forth on this point. She ultimately left, and after a few minutes, she texted TJ (who was in the class at the time) and told him that she had spoken to me, and I had again told her that she could take the class if she chose to.

As I confirmed with you last week, I had not granted her permission to take the class, either before or during the day last Thursday. I, in fact, did not speak to her at all last Thursday.

As always, I appreciate your effort to be respectful towards her and mindful of confidentiality regarding her position when she precipitates these conversations in front of other residents.

Please let me know if you have any additions or modifications of the above.
Lisa

Lisa Catapano, MD, PhD
Director, Residency Training Program
Associate Professor of Psychiatry
Department of Psychiatry
George Washington Unive
2120 L Street NW
Washington DC 20037

**DR. CATAPANO DECLARATION EXHIBIT #164**

GWU 001781

se

2/13/2017                                                The George Washington University Mail - Update



                                                                    Stephanie Waggel <swaggel@gwmail.gwu.edu>

# Update
4 messages

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                                    Wed, Jan 13, 2016 at 8:33 AM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Lori Kels <lkels@mfa.gwu.edu>, Jeffrey Berger <jberger@mfa.gwu.edu>

Hi Stephanie,
I just wanted to let you know that Dr. Gandhi has reviewed your essay and is preparing his response, which he will go over with you as soon as it is complete.
I also want to assure you that when you are ready to be put back in the call schedule, you will be given a reasonable amount of advance notice (no less than a week).
Take care,

Lisa Catapano, MD, PhD
Program Director
Associate Professor of Psychiatry
George Washington University
2120 L Street, NW
Washington DC 20037
202-741-2886

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202) 741-3636 and destroy the original message and all copies.

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                                Wed, Jan 13, 2016 at 9:31 AM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>
Cc: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Lori Kels <lkels@mfa.gwu.edu>, Jeffrey Berger <jberger@mfa.gwu.edu>, Mary Tucker <mtucker@gwu.edu>

Dear Dr. Catapano,

Thank you for your reply. I do hope this can be addressed soon as I have been trying to complete this assignment for 8 weeks.

Best,
Stephanie

On Wednesday, January 13, 2016, Lisa Catapano <lcatapano@mfa.gwu.edu> wrote:
> Hi Stephanie,
> I just wanted to let you know that Dr. Gandhi has reviewed your essay and is preparing his response, which he will go over with you as soon as it is complete.
> I also want to assure you that when you are ready to be put back in the call schedule, you will be given a reasonable amount of advance notice (no less than a week).
> Take care,
>
> Lisa Catapano, MD, PhD
> Program Director
> Associate Professor of Psychiatry
> George Washington University
> 2120 L Street, NW
> Washington DC 20037
> 202-741-2886
>
> Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain

**DR. CATAPANO DECLARATION
EXHIBIT #165**

information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202) 741-3636 and destroy the original message and all copies.

—
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

---

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                                    Wed, Jan 13, 2016 at 10:24 AM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Lori Kels <lkels@mfa.gwu.edu>, Jeffrey Berger <jberger@mfa.gwu.edu>, Mary Tucker <mtucker@gwu.edu>

Hi Stephanie,
We are addressing it as quickly as we can, but, just to be clear, you only handed in the assignment last week.
You are not currently in the call schedule for this month or next. When you are ready to be put back on call, we will give you plenty of notice so you can arrange your schedule.

Lisa Catapano, MD, PhD
Program Director
Associate Professor of Psychiatry
George Washington University
2120 L Street, NW
Washington DC 20037
202-741-2886

**From:** Stephanie Waggel <swaggel@gwmail.gwu.edu>
**Sent:** Wednesday, January 13, 2016 9:31:46 AM
**To:** Lisa Catapano
**Cc:** Baiju Gandhi; Lori Kels; Jeffrey Berger; Mary Tucker
**Subject:** Re: Update

Dear Dr. Catapano,

Thank you for your reply. I do hope this can be addressed soon as I have been trying to complete this assignment for 8 weeks.

Best,
Stephanie

On Wednesday, January 13, 2016, Lisa Catapano <lcatapano@mfa.gwu.edu> wrote:
Hi Stephanie,
I just wanted to let you know that Dr. Gandhi has reviewed your essay and is preparing his response, which he will go over with you as soon as it is complete.
I also want to assure you that when you are ready to be put back in the call schedule, you will be given a reasonable amount of advance notice (no less than a week).
Take care,

Lisa Catapano, MD, PhD
Program Director
Associate Professor of Psychiatry
George Washington University
2120 L Street, NW
Washington DC 20037
202-741-2886

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent

2/13/2017                                The George Washington University Mail - Update

responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error,
please call (202) 741-3636 and destroy the original message and all copies.

Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying
of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible
for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call
(202) 741-3636 and destroy the original message and all copies.

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                          Wed, Jan 13, 2016 at 11:18 AM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>
Cc: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Lori Kels <lkels@mfa.gwu.edu>, Jeffrey Berger <jberger@mfa.gwu.edu>, Mary
Tucker <mtucker@gwu.edu>

Dear Dr. Catapano,

Thank you for agreeing to give me notice. I gave my presentations to Dr. Gandhi on Jan 3. The rate limiting factor since
Nov 19th was finding a staff member willing to take the position of listening to my presentations as the first two assigned
to me were unable.

Best,
Stephanie

On Wednesday, January 13, 2016, Lisa Catapano <lcatapano@mfa.gwu.edu> wrote:
  Hi Stephanie,
  We are addressing it as quickly as we can, but, just to be clear, you only handed in the assignment last week.
  You are not currently in the call schedule for this month or next. When you are ready to be put back on call, we will
  give you plenty of notice so you can arrange your schedule.

  Lisa Catapano, MD, PhD
  Program Director
  Associate Professor of Psychiatry
  George Washington University
  2120 L Street, NW
  Washington DC 20037
  202-741-2886

  **From:** Stephanie Waggel <swaggel@gwmail.gwu.edu>
  **Sent:** Wednesday, January 13, 2016 9:31:46 AM
  **To:** Lisa Catapano
  **Cc:** Baiju Gandhi; Lori Kels; Jeffrey Berger; Mary Tucker
  **Subject:** Re: Update

  Dear Dr. Catapano,

  Thank you for your reply. I do hope this can be addressed soon as I have been trying to complete this assignment for
  8 weeks.

  Best,
  Stephanie

  On Wednesday, January 13, 2016, Lisa Catapano <lcatapano@mfa.gwu.edu> wrote:
    Hi Stephanie,
    I just wanted to let you know that Dr. Gandhi has reviewed your essay and is preparing his response, which he will

| | |
|---|---|
| **From:** | Babak Sarani |
| **Sent:** | Wednesday, January 13, 2016 10:22 AM |
| **To:** | Lisa Catapano; James Griffith; Jeffrey Berger |
| **Subject:** | RE: Stephanie |

Thank you very much.

Babak Sarani, MD, FACS, FCCM
Associate Professor of Surgery
Director, Center for Trauma and Critical Care
Director, George Washington Transfer Center
George Washington University

**From:** Lisa Catapano
**Sent:** Wednesday, January 13, 2016 10:21 AM
**To:** Babak Sarani; James Griffith; Jeffrey Berger
**Subject:** Re: Stephanie

Hi Babak,
I emailed Stephanie earlier this morning to assure her that her assignment is being reviewed and Dr. Gandhi will meet with her personally to discuss it. She is not currently on the call schedule for this month, and will be given reasonable advance notice when she is put back in the schedule.

Lisa Catapano, MD, PhD
Program Director
Associate Professor of Psychiatry
George Washington University
2120 L Street, NW
Washington DC 20037
202-741-2886

**From:** Babak Sarani
**Sent:** Wednesday, January 13, 2016 9:44:08 AM
**To:** James Griffith; Lisa Catapano
**Subject:** Stephanie

Hi Jim and Lisa. I just received the email below from Stephanie. Can you please reach out to her. I would also recommend having her sign a statement that you met and discussed this since she has sent me several email stating that she is not receiving any communication or guidance from you whereas your records and Jeff Berger confirm that you have met with her numerous times. I'm out of town this week at a meeting but happy to try to serve as an intermediary as needed.

"I wanted to let you know that I submitted the assignment two weekends ago and have still not heard about my call schedule. I am also supposed to be on call at NVMHI this month but it is impossible to finalize a schedule there when I do not know my Six South call schedule. Can you think of any last way I can get psych administration to respond to me?"

Babak Sarani, MD, FACS, FCCM
Associate Professor of Surgery
Director, Center for Trauma and Critical Care



**DR. CATAPANO DECLARATION
EXHIBIT #166**

GWU 000697

**Victoria H. Anderson**

| | |
|---|---|
| om: | James Griffith |
| **Sent:** | Wednesday, January 13, 2016 3:33 PM |
| **To:** | Jeffrey Berger |
| **Cc:** | Lisa Catapano |
| **Subject:** | Re: Final grade |
| **Attachments:** | 2015 Clinical Neurosciences Exam Scores.docx |

Jeff, this is not an honest portrayal.  I've attached the exam grades for the whole class for you to see where Stephanie's fits.  Stephanie's grade on the last exam was middle of the class, with all the grades clustered (class average was 80, Stephanie made 82).  This was not a cumulative exam, but an exam on a single section of a course-- the third of probably six exams over course of the year.  I have not prevented her from sitting in the class, but think she should re-do the whole course, which we did with a similar analagous situation with a different resident last year.

Griff

James L. Griffith, M.D.
Leon M. Yochelson Professor and Chair
Dept. of Psychiatry and Behavioral Sciences
2120 L Street, N.W.
~uite 600
√ashington, DC 20037
Phone:   (202) 741-2879
FAX:       (202) 741-2891
E-Mail:    jgriffith@mfa.gwu.edu
Web:       www.gwupsychiatry.org


**From:** Jeffrey Berger
**Sent:** Wednesday, January 13, 2016 1:25 PM
**To:** James Griffith
**Cc:** Lisa Catapano
**Subject:** Fw: Final grade


griff:

is the below email accurate (before I add it to her file for the appeal of the failed course)?

if so, has a decision been made to allow her to continue on in the course and only redo the first part?

ǝff

**DR. CATAPANO DECLARATION
EXHIBIT #167**                    **GWU 001712**

The George Washington University Mail - Final grade                                      Page 1 of 1


THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON, DC

Tucker, Mary <mtucker@email.gwu.edu>

## Final grade
1 message

**Waggel, Stephanie** <swaggel@email.gwu.edu>                        Wed, Jan 13, 2016 at 1:07 PM
To: Jeffrey Berger <jberger@mfa.gwu.edu>
Cc: Mary Tucker <mtucker@gwu.edu>

Dear Dr. Berger,

Would you be able to add to my grade appeal a new piece of information I was just made aware of? I
received an 82% on my cumulative final for the neuroscience course they chose to fail me in. Please also
add the fact that this was one of the highest scores in the class.

Thank you,
Stephanie

--
Stephanie E. Waggel M.D, M.S.

GWU 001713

# 2015 1st Clinical Neurosciences Exam

**Average Score =   65**



Stephanie Waggel   33

**Average Score =   65**
(77, 73, 70, 70, 70, 63, 33)

**2015 2nd   Clinical Neurosciences Exam**

**Average Score =   64**



Stephanie Waggel   33

**Average Score =   64**
(91, 76, 67, 64, 58, 33)

**2015 3rd  Clinical Neurosciences Exam**
**Average Score =   80**



Stephanie Waggel   82

**Average Score =   80**
(86, 82, 82, 80, 80, 78, 72))

GWU 001715

**PRIVILEGED AND CONFIDENTIAL**

Resident Request for Review of Reportable Action

Resident:  Stephanie Waggel, MD, PGY 2, Psychiatry
Reportable Action:  Non-promotion to PGY 3; Denial of credit for required courses

Physician Reviewer:  Anne Cioletti, MD, Assistant Professor of Medicine, Vice Chair, GME

Interviews conducted by Dr. Anne Cioletti for the Resident Request for Review of the
Reportable Action in accordance with GME Academic Improvement Policy

---

**January 20, 2016**

Present at meeting:  Dr. Jeffrey Berger, Associate Dean for GME; Dr. Anne Cioletti, Physician
Reviewer; Dr. Lisa Catapano, Program Director, Psychiatry; Dr. Lork Kels, Associate Program
Director, Psychiatry; Ms. Mary Tucker, GME Director.

Dr. Berger opened the session, stating that per our GME Academic Improvement Policy, this
interview is part of the appeal requested by Stephanie Waggel as a result of the two reportable
actions taken by the residency program.  Dr. Berger reviewed the policy, including the
requirement for structured feedback to the resident and the Letter of Deficiency with the
opportunity for a resident to correct identified deficiencies.  He explained that the two reportable
actions are the determination that Dr. Waggel is being denied credit for two psychiatry courses
and that the Psychiatry Clinical Competency Committee (CCC) has determined that she should
not be promoted to the next level of training at the end of the academic year because of clinical
deficiencies.  He clarified that courses in psychiatry are counted as rotations, so under our policy,
failure of the courses and denial of credit would be considered a reportable action.

Dr. Berger went on to explain in detail the requirements of the policy, including his role and that
of Dr. Cioletti, who he has appointed as the neutral physican reviewer.  Her role is to determine
whether Dr. Waggel was afforded due process according to the GW policy, which requires notice
of the deficiency, the opportunity to cure the deficiency, and a reasonably made decision by the
program to deny credit for the courses and not to promote Dr. Waggel.

Dr. Berger explained that Cioletti has been given Dr. Waggel's file for review and that in the
meeting with Dr. Waggel she will inquire about extenuating circumstances, such as illness and
drug use.  She may also consult with others (such as program directors) as needed, and finally
relay her determination to Dr. Berger.  If either the resident or the program director disagrees
with her decision, either can request a final review by the Senior Associate Dean for MD

1



DR. CATAPANO DECLARATION
EXHIBIT #168                    GWU 002481

Programs, Dr. Richard Simons, who will review the process to ensure that the requirements for due process according to the GME policy were met.

Dr. Cioletti began by asking Dr. Catapano about the expectations for the psychiatry courses. Dr. Catapano responded that residents must attend 70% of the classes and that some have reports and exams that are graded. The Neuroscience course, conducted by Dr. James Griffith, has 3 exams in the first half of the academic year. Two exams were the basis for the reportable action. Dr. Waggel failed the first two of these and scored in the median range for the third. Failure of the course does not mean you have to repeat the entire year. The Psychodynamic theory course, under the direction of Dr. Cheryl Collins, also requires reports, and attendance and participation are counted. Residents who demonstrate competency in this course are assigned a psychotherapy patient. Dr. Catapano explained that in order to progress to the next course (Dr. Zinner's Psychodynamic Psyhotherapy course) the resident must pass the course and be assigned a patient. The 3rd and 4th year of psychiatry training are all psychotherapy, so having to repeat the course impacts on the resident's promotion date. Dr. Cioletti asked if residents have failed the course in the past. Dr. Catapano responded that two years ago a resident failed the course, but then went out on extended leave and returned the following July and repeated the course.

Department policies are in place that require 70% attendance and outline the expectations for passing the course and for participation. Residents can see the course outline a year in advance and it is put on the Google calendar by the residency coordinator. Residents have a full day of protected didactic time. Dr. Berger inquired about ACGME requirements and it was reported that the program requirements mention categories of didactics but there is no instruction regarding pass/fail. He stated that as a follow-up a copy of the syllabus for each of the courses should be provided. (Note: this was emailed to Dr. Berger by Dr. Waggel)

Dr. Cioletti then discussed the issues with patient care, as outlined in the first Letter of Deficiency. Dr. Catapano reported that she received emails expressing concerns from Dr. Malik (Inova Fairfax) in July and in January. There were additional concerns in February and March from attendings. Dr. Waggel believed she was receiving positive feedback and did not appear to be hearing criticisms. On February 10, she could not be located at Fairfax. In March, the medicine attendings expressed concerns. When the concerns were brought to Dr. Catapano's attention, she met with Dr. Waggel and asked if there was a medical issue. Dr. Waggel stated this was private. In March, Dr. Waggel brought her MRIs to rounds an asked the residents to read them. She missed a shift in the ER while on that rotation. Per Dr. Catapano, she took 2 weeks leave in May, 2-3 weeks in July, administrative leave in November for 3 days – 1 week. She has taken random days for doctor appointments and has weekly psychotherapy and genetic counseling. This is recorded on a spreadsheet kept by the coordinator.

Note: per GME records on MedHub and University HR, Dr. Waggel was on approved medical leave 7/20-8/3/15 and FMLA 10/26-10/30.

2

Dr. Catapano reported that Dr. Waggel received feedback at her semi-annual evaluation held in late August/early September. She was given a summary sheet and notes were discussed with her. The July 15 Letter of Deficiency was delivered August 15 (she had been on leave). It detailed deficiencies in Professionalism and indicated that he was below level for the Milestones. Drs. Malik and Crone (both Inova Fairfax) are members of the CCC. It was noted that Dr. Waggel never completed an evaluation on MedHub for Dr. Mailk.

The most concerning incident occurred last fall, resulting in the RCA. She was given very direct feedback by Veronica on 6 South. Dr. Waggel continued to take intermittent time off. In September she was assigned side-by-side/joint/buddy call. After the RCA she was put on attending-supervised call and received the Letter of Deficiency. During her CNMC rotation she took home call, which did not entail as much responsibility. Beginning January 1, she was taken off the call schedule.

Dr. Catapano reported that Dr. Waggel was notified of her deficiencies regarding clinical duties multiple times. She is not progressing as far as the Milestones and she is not able to fit into the call pool without supervision. She has not satisfied the requirements of the Letters of Deficiency to the satisfaction of the attendings or the CCC. She is not focused on them. She is not on track with her peers clinically. At this time it is the decision of the CCC that she is not able to take independent call.

Dr. Waggel had a medical condition but received support from the program and the opportunity to take time off to take care of herself. She was encouraged to take extended time off until she recovered, but she did not do so. The program has tried to be fair and ethical. Dr. Waggel is very stressed and defensive when given feedback. She believes the criticisms to be unfair. Dr. Catapano reported that Dr. Waggel was dishonest in stating that she had permission from her to attend Dr. Zinner's psychotherapy course. In addition, she misunderstood the grading of the neuroscience course, believing that the final test was cumulative. When she was taken off the call schedule, she went to the ER as a patient, where she was referred to Dr. Babak Sarani, one of the Resident Ombudspersons. She stated that she never received the Letter of Deficiency taking her off the call schedule.

GWU 002483

**Victoria H. Anderson**

| | |
|---|---|
| **om:** | Baiju Gandhi <baiju.gandhi@gmail.com> |
| **Sent:** | Wednesday, January 20, 2016 6:12 PM |
| **To:** | Lisa Catapano; Stephanie Waggel |
| **Subject:** | feedback aggression paper |
| **Attachments:** | Feedback Aggression Paper.txt |

Dr. Waggel,

Attached is a written report of my feedback on your essay.  CC'ed is Dr. Catapano.  Will be calling you in a couple minutes to discuss.

Best,

Baiju Gandhi, M.D., M.A.
Assistant Professor of Psychiatry
George Washington University Hospital

**DR. CATAPANO DECLARATION
EXHIBIT #169**

GWU 001799

Feedback Aggression Paper

Feedback on Aggression Management Article

Paragraph 1
Reasonably sets tone for article by noting relevant statistics regarding workplace violence in the hospital setting and identifies violence in hospital setting as a problem.

The following points are noted as strategies for violence risk reduction in patients
A. Access to information/understanding laws relevant to workplace violence
B. Identify patients at risk for agitation or aggression
C. Have a clear protocol for identifying patients at risk for violence
D. Developing De-escalation protocols
E. Developing counseling programs for victims of workplace violence

Paragraph 2
Reasonably organized
Demonstrates that hospital violence is a problem

Paragraph 3
-Definition of an administrative discharge is incomplete, disorganized. with grammar errors

"An administrative discharge a discharge by a hospital administrator that is likely to result in a significance improvement. In most states this is a matter of condition, improvement or when release would be in the patient's best interest or for the interest of the hospital. The most current Psychiatry Resident Official Call Manual, 2013-2014 Policy states one fact about an administrative discharge and that it must be discussed with an attending.  Including information on what it is and how to handle it in the resident documents would, therefore, be beneficial."

Paragraph 4
Reasonably demonstrates that reporting of incidents in hospital setting can be beneficial

Paragraph 5
Talks about identifying risk factors for patient violence, but elaboration on this point is incomplete. Would like to see further elaboration on how to identify patients at risk for agitation rather than merely stating that patients who are identified as being at risk for violence should be communicated in a standardized manner - what is the process by which one identifies an at-risk patient?

When I was an intern, I created a standardized chart to be included in the sign-out when the interns sign out to the night resident which could be beneficial in this way.  When interns can identify which of their patients have a high suicide, agitation, and aggression risk, they receive the appropriate attention. These patients should be identified based on past behaviors, collateral, or exhibited warning behaviors. The ENAEDVS report showed physical violence rarely occurred without verbal abuse.  My chart was presented to all residents last year and was formally accepted into the sign-out.

Paragraph 6
-Do studies really show that behavioral contracts reduce agitation? Which studies?

""Behavior Contracts" that specifically warn the patient what they have done that is not acceptable and how they can avoid repeating it. I also inform them of the punishments that may occur if they break another rule. The contract might say, for example, if you punch the wall again security will be called. I find that this greatly reduces the number of violent outbursts and maintains clarity, and many of the nursing assault studies concur."

GWU 001800

Feedback Aggression Paper

Paragraph 7
-incomplete elaboration on code strong management

"The most current Psychiatry Resident Official Call Manual, 2013-2014 Policy
document, and the On Call Expectations document state the following about Code
Strongs: They are run by psych residents and inters and they are the highest
priority. The resident/intern must put in orders if the code is on a Six South
patient, watch for patient breathing, and write a note on the incident. It would
befit patient aggression management if information on these terms were clear and
consistent. This could be accomplished by including possible scenarios and
corresponding protocol and having a "mock code strong."

Paragraph 8
What is the nature of the program you have attempted to implement with risk
management regarding post-violence/victim counseling?

Overall

Positive:
Use of statistics
Big picture view of hospital violence
Effort was put in to three page document

Need for improvement
Overfocus on "big picture" or legal aspects of hospital violence/patient agitation.
Needs more focus on details of clinical management of aggression in an inpatient
setting
Needs improved definition/elaboration on administrative discharge and code strong
management.  If the on call manual is insufficient for resource, then other
collateral sources can be consulted.
Overall flow of paper is somewhat haphazard with multiple grammatical errors.
Lack of Reference section, particularly given citing of multiple studies and
statistics

Big Points for Feedback:
A. Overfocus on the big picture rather than clinical management of aggression in
inpatient setting as outline by letter of deficiency:
"Write a 600 word description of management strategies and alternatives for
management of patient aggression in the inpatient setting.  Included in this report
please address the indications for calling a code strong and the meaning of
administrative discharge.  This report will be due within 4 weeks of receipt of this
letter (Nov 19, 2015)."

The following article is an example of content that could be used to enhance this
aspect of the essay:
http://www.currentpsychiatry.com/home/article/calming-agitation-with-words-not-drugs
-10-commandments-for-safety/21a24a1c06c72bfcea095a9aa19fb49d.html

B. Disorganized flow at times
C. Purpose of essay was to address deficits in management of code strong on a
particular call night - essay should include ways resident could improve personal
approach to agitation management.

GWU 001801

10/19/2017                          The George Washington University Mail - Feedback on Essay Complete


Header Page 380 of 466.

Stephanie Waggel <swaggel@gwmail.gwu.edu>

## Feedback on Essay Complete
6 messages

**Baiju Gandhi** <bgandhi@mfa.gwu.edu>                          Wed, Jan 20, 2016 at 6:37 PM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>, Stephanie Waggel <swaggel@gwmail.gwu.edu>

Lisa,

I just finishing speaking with Dr. Waggel regarding feedback on her aggression management
essay.  The content of the verbal feedback was essentially verbatim of what is written in my
documented feedback, which is attached to this email.  Thank you, and I look forward to working
with Dr. Waggel in her next steps of remediation as directed by you.

Best,

Baiju Gandhi, M.D., M.A.
Assistant Professor of Psychiatry
Medical Faculty Associates
George Washington University
bgandhi@mfa.gwu.edu

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of
this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for
delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202)
741-3636 and destroy the original message and all copies.

📄 **Feedback Aggression Paper.txt**
6K

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                          Thu, Jan 21, 2016 at 7:54 AM
To: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Stephanie Waggel <swaggel@gwmail.gwu.edu>, Lori Kels
<lkels@mfa.gwu.edu>

Hi Stephanie,
You and I should meet to discuss the next steps ... you will not be put back in the call schedule right now, and I will take
Dr. Gandhi's review to the CCC and they will recommend the next steps in your remediation.
I am available to meet today at 4:30 or Monday at 8:30 if you want to discuss it.

Lisa Catapano, MD, PhD
Program Director
Associate Professor of Psychiatry
George Washington University
2120 L Street, NW
Washington DC 20037
202-741-2886

Stephanie Waggel Supp. Prod. (Oct.) 380 of 466.

## DR. CATAPANO DECLARATION
## EXHIBIT #170

**From:** Baiju Gandhi
Header Page 381 of 466.
**Sent:** Wednesday, January 20, 2016 6:37:54 PM
**To:** Lisa Catapano; Stephanie Waggel
**Subject:** Feedback on Essay Complete

[Quoted text hidden]
[Quoted text hidden]

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                              Thu, Jan 21, 2016 at 10:42 AM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>
Cc: Lori Kels <lkels@mfa.gwu.edu>

I can meet at 4:30pm today. I would still like to have my 5 questions answered. It is a violation to change punishments from what they were originally written to be formally on paper. This is especially true given that it was never discussed with me. Who is in the CCC and when do they meet? I will be anticipating an explanation of how on call "effective immediately" written in my letter became on call after a series of events that we will make known to you after they come up. Much of what has occurred over the past few months has violated GW code, ACGME, JCAHO, OSHA, United States Law, and as you are aware, making me extremely ill. I've given more than enough time for it to be corrected. Hopefully our 4:30 meeting will provide some answers. If it does not, my law firm is prepared to contact you and the rest of the faculty in the department and hospital administrators. They specialize in resident cases so I have faith that if the psych department doesn't come through for me, my law firm certainly will.

Sent from my iPhone
[Quoted text hidden]

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                              Thu, Jan 21, 2016 at 11:02 AM
To: Seth Rosenblatt <sethro123@gmail.com>

---------- Forwarded message ----------
From: **Baiju Gandhi** <bgandhi@mfa.gwu.edu>
Date: Wed, Jan 20, 2016 at 6:37 PM
Subject: Feedback on Essay Complete
[Quoted text hidden]

--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

📄 **Feedback Aggression Paper.txt**
6K

---

**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                              Thu, Jan 21, 2016 at 11:43 PM
To: Lisa Catapano <lcatapano@mfa.gwu.edu>, Lori Kels <lkels@mfa.gwu.edu>
Cc: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Jeffrey Berger <jberger@mfa.gwu.edu>, Mary Tucker <mtucker@gwu.edu>

Good evening. Although Dr. Gandhi stated it would not be necessary to add his suggestions to my essay unless later requested, I decided it would be beneficial go ahead and do so. It is attached below. Please let me know if there is anything else I can do to remedy this deficiency.

Thank you,
Stephanie
[Quoted text hidden]

--
Stephanie E. Waggel, M.D., M.S.
The George Washington University Hospital

_____  Stephanie Waggel Supp. Prod. (Oct.) 381 of 466.

**Waggel Management of Patient Agression Assignment Updated.docx**
Header Page 382 of 466.
25K

---

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                              Fri, Jan 22, 2016 at 11:03 AM
To: Stephanie Waggel <swaggel@gwmail.gwu.edu>, Lori Kels <lkels@mfa.gwu.edu>
Cc: Baiju Gandhi <bgandhi@mfa.gwu.edu>, Jeffrey Berger <jberger@mfa.gwu.edu>, Mary Tucker <mtucker@gwu.edu>

Thanks, Stephanie. I appreciate the effort. I'll be in touch next week re:next steps.

Lisa Catapano, MD, PhD
Program Director
Associate Professor of Psychiatry
George Washington University
2120 L Street, NW
Washington DC 20037
202-741-2886

---

**From:** Stephanie Waggel <swaggel@gwmail.gwu.edu>
**Sent:** Thursday, January 21, 2016 11:43:17 PM
**To:** Lisa Catapano; Lori Kels
**Cc:** Baiju Gandhi; Jeffrey Berger; Mary Tucker
**Subject:** Re: Feedback on Essay Complete

[Quoted text hidden]
[Quoted text hidden]

Stephanie Waggel Supp. Prod. (Oct.) 382 of 466.

2/13/2017

The George Washington University Mail - meeting summary



Stephanie Waggel <swaggel@gwmail.gwu.edu>

## meeting summary
4 messages

**Lisa Catapano** <lcatapano@mfa.gwu.edu>                              Thu, Jan 21, 2016 at 5:14 PM
To: Lori Kels <lkels@mfa.gwu.edu>, Stephanie Waggel <swaggel@gwmail.gwu.edu>
Cc: "Victoria H. Anderson" <vhanderson@mfa.gwu.edu>

Hi Stephanie,

Thanks for coming to meet with us today.  I'm attaching the notes we typed up during the meeting ... since we all
reviewed it before we left, I think it's a reasonable synopsis of everything we covered.  As we discussed, I will review Dr.
Gandhi's comments with the CCC, and plan to get back to you within 10 days to let you know their recommendations.
In the meantime, if you have any questions or further issues to discuss, you can always email me (and I will respond as
per #4).

Take care of yourself.


Lisa Catapano, MD, PhD

Director, Residency Training Program

Associate Professor of Psychiatry

Department of Psychiatry

George Washington University

2120 L Street NW

Washington DC 20037

(202) 741-2886


Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying
of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible
for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call
(202) 741-3636 and destroy the original message and all copies.

Stephanie Waggel mtg 1.21.16.docx
15K


**Stephanie Waggel** <swaggel@gwmail.gwu.edu>                         Thu, Jan 21, 2016 at 5:18 PM
To: "<sethro123@gmail.com>" <sethro123@gmail.com>


Sent from my iPhone

Begin forwarded message:

DR. CATAPANO DECLARATION
EXHIBIT #171

686

Stephanie Waggel

Lisa Catapano

Lori Kels

January 21 2016   4:30-5:00

Meeting summary:

1. The wording in your last LOD was somewhat vague, but was intended to convey that, effective immediately, you were to cease having to be on call while supervised by another resident.  You did continue to be on call at CNMC that month, and during that time Dr. Norris, Dr. Gandhi, Dr. Kels and I, with the review of the CCC, developed a plan to implement your improvement plan per your LOD, in which you would work with Dr. Gandhi and not be put back into the GW call schedule, supervised by an attending, until you satisfactorily completed the improvement plan laid out in the letter.

2. We apologize that the updated call schedule at the end of December before you heard directly from Dr. Kels that you were not on the schedule.  It was our intent to have Dr. Kels email you first, and the result of a miscommunication among our team that the call schedule went out first.

3. We fully support you taking the vacation days you are entitled to, and recommend that you work with Jason to identify days that you can take off.

4. You requested that Dr. Kels and I be more prompt in our replies to your emails, even if it is just to acknowledge that we received it and will address the issues it brings up as soon as possible. We will be happy to try to do this.

5. You noted that there was a delay on our end last month with respect to identifying Dr. Gandhi as the supervising attending for your improvement plan.

6. There is no basis for the rumor you heard that you will be put back into an accelerated, high-frequency call schedule once you resume call.

7. Per Dr. Gandhi's review of your essay, there were aspects of the essay that need improvement. You will not be put back into the call schedule immediately, and the CCC will review Dr. Gandhi's comments and make their suggestions re: what further you need to do as far as your Improvement Plan and readiness to resume call in the hospital.

GWU 001778

**Victoria H. Anderson**

| | |
|---|---|
| om: | Jason Emejuru <jemejuru@gmail.com> |
| Sent: | Monday, February 01, 2016 1:04 PM |
| To: | Lisa Catapano |
| Cc: | Lori Kels; dkminor@email.gwu.edu; Victoria H. Anderson; Allen Dyer |
| Subject: | Re: SW's Childrens Rotation - CPU pager |

Received confirmation from both Stephanie and Lisa that the pager has been handed to Lisa.

On Mon, Feb 1, 2016 at 12:18 PM, Lisa Catapano <lcatapano@mfa.gwu.edu> wrote:
Jason,
Please call Stephanie today on her cell and ask her to deliver the pager to whoever is supposed to have it immediately after work today, even if she has to bring it to their home.  I would like confirmation by 9am tomorrow that they have it ... if not, I will take it from there.
Thanks.

Lisa Catapano, MD, PhD
Director, Residency Training Program
Associate Professor of Psychiatry
Department of Psychiatry
George Washington University
2120 L Street NW
Washington DC 20037
(202) 741-2886

-----Original Message-----
From: Jason [mailto:jemejuru@gmail.com]
Sent: Sunday, January 31, 2016 11:07 AM
To: Lisa Catapano; Lori Kels; dkminor@email.gwu.edu; Victoria H. Anderson
Subject: SW's Childrens Rotation - CPU pager

Hi all,

Below is the text I received from Carrie regarding Stephanie not returning the CPU pager she carried during her time at Childrens in December.
Apparently she has been requiring colleagues to hang out with her before she return it.

*Carrie would like for us to not mention her name if we discuss this with Stephanie.

I emailed Stephanie today about it. This looks pretty unacceptable.

Jason

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or

an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call (202) 741-3636 and destroy the original message and all copies.

--

Jason Emejuru, MD
Chief Resident
Department of Psychiatry & Behavioral Sciences
George Washington University

GWU 001751

 Messages      Carrie                    Details

Hey Jason I am not sure
if anyone told u but there
has been a huge issue
with getting waggel to
return the children's call
pager since she was on
CPU over a month ago.
Lisa asked repeatedly
last month for her to
bring it to Didactics but
waggel refused and
made ridiculous
demands (we have to
drink with her or go out
with her to get it). Seth
sent a text yesterday
after speaking to one of
the fellows who said we
are ALL in trouble if the
pager is not returned
(they apparently have
been tryin to reach
waggel but no success).

  

GWU 001752



ооооо Sprint LTE          10:52 AM

< Messages          Carrie          Details

Lisa told me today she
will go to dinner with
waggel to try to get the
pager but this is
completely unacceptable
behavior on waggel's
part and is affecting
patient care. I am not
sure how this has
managed to go on for so
long. I am on CPU next
week and told waggel to
give Lisa the pager but i
don't know if she will.

I hate bringing this to you
but not returning and
keeping a hospital pager
for over 4 weeks greatly
affecting patient care is
completely inappropriate
and unacceptable
behavior and I will NOT





GWU 001753



pager but this is completely unacceptable behavior on waggel's part and is affecting patient care. I am not sure how this has managed to go on for so long. I am on CPU next week and told waggel to give Lisa the pager but i don't know if she will.

I hate bringing this to you but not returning and keeping a hospital pager for over 4 weeks greatly affecting patient care is completely inappropriate and unacceptable behavior and I will NOT get trouble for her inappropriateness





GWU 001754

To: Dr. Stephanie Waggel

CC: Dr. Jeffrey Berger, Associate Dean for GME

From: Dr. Lisa Catapano, Program Director

Dr. James Griffith, Chair, Department of Psychiatry and Behavioral Sciences

Re: Notice of concerns of unprofessional conduct

Date: February 15, 2016

---

In accord with the GW Resident Misconduct Policy, we are providing you this notice of deficiency of professionalism, based on a number of incidents of concern.

#1) On January 7, 2016, you were in the classroom when Dr. John Zinner's Psychodynamic Psychotherapy class was supposed to start. Prior to that date, you had been informed several times, both in person and in writing, that you were not allowed to take this class, because you had failed to pass Dr. Cheryl Collins's precedent class on psychodynamic theory. At the start of class on January 7, Dr. Zinner let you know he was waiting for you to leave in order to begin. Per Dr. Zinner, "I told her I could not begin the class because she was not in the class and she replied that [Dr. Catapano] had left it up to me [Dr. Zinner] to decide whether she could take the seminar." You told Dr. Zinner, falsely, that [Dr. Catapano] had approved of you taking the class. According to Dr. Zinner, you left the classroom, and soon after texted one of the residents in the class saying that you had spoken to [Dr. Catapano] and [she] had confirmed that you could take the class. For the record, Dr. Catapano reports that you and she did not meet or speak on that day.

DR. CATAPANO DECLARATION
EXHIBIT #173

GWU 000964

This is perhaps the most flagrant of a series of mistruths including lying to Dr. Berger that you had passed Dr. Griffith's neuroscience course with the highest cumulative grade, which in fact you had not; stating that you had never been given any feedback about your performance, the four letters of deficiency notwithstanding, and telling Dr. Collins that failing her course was the only thing holding you back from being promoted.

#2) A second concern regarding Professionalism and Systems-Based Practice is based on your failure to identify your evaluating attendings in MedHub. In order to receive clinical evaluations for your monthly rotations. As you know, you must enter your supervisors into the system. You are prompted by the system to identify your supervisors on the 21st of each month. You have not identified your supervisors for December, 2015, or January 2016, and did not respond to Residency Coordinator Tory Anderson's reminder on February 1 to do so. As a result, you do not have clinical evaluations completed by your supervisors for these months.

#3) You have failed to comply with the academic improvement plans and other requirements of the program. You did not comply with the first letter of deficiency (July 15, 2015) for not showing up for an Emergency Medicine shift on June 10. The requirement of this LOD asked you simply to contact Dr. Dyer within two weeks and notify him of your supervisors, so he could check with them about your attendance. It took six weeks to schedule that meeting and you never followed up with notification of supervisors.

Also, you failed to comply with the GW Hospital requirement for a health clearance by September 30, 2015. Despite an extension granted by Dr. Gary Little, Hospital Director, you were not cleared by the extended deadline of October 14, 2015. This resulted in another letter of deficiency from Dr. Berger (October 28, 2015).

4) Your behavior has been disruptive in a number of ways. Most

flagrant have been a series of hostile and antagonistic emails and texts to the program director and to your classmates, threatening to "bring down the program". This has been alarming to them as they try to focus on their own clinical and educational responsibilities, no less conducive to your own professional development.

These issues, individually and cumulatively, as well as issues documented in other Letters of Deficiency (November 19, 2015 and December 14, 2015) demonstrate a deficiency in Professionalism. To be deliberately untruthful in the workplace raises very serious concerns about your integrity and reliability.   These are serious concerns as Professionalism is foundational to the practice of medicine.

In accord with the Policy on Resident misconduct, we are notifying the Associate Dean for GME, who will receive a copy of this memo and will review these concerns to determine what further steps will may be warranted and necessary.

GWU 000966

THE GEORGE
WASHINGTON
UNIVERSITY

WASHINGTON, DC

**Office of Graduate Medical Education**

February 25, 2016

Stephanie Waggle, MD
1230 23rd Street, NW Apt 909
Washington, DC 20037

Dr. Waggle:

This letter serves as formal notification of the determination of Anne Cioletti, M.D., who was appointed as the physician reviewer, pursuant to the GME Academic Improvement Policy ("Policy") to review the following decisions by your Program Director, Lisa Catapano, M.D: 1) notification of non-promotion to the 3rd year of post-graduate training (PGY3) in July 2016; 2) psychodynamic theory course failure (Course Director: Dr. Collins); and 3) neuroscience course failure (Course Director: Dr. Griffith), at least the first two sections.

After a careful and thorough review, Dr. Cioletti has determined that you were notified of academic deficiencies, and given structured feedback and the opportunity to cure in the form of meetings and discussions with supervising faculty and the program director, examination score reporting, course syllabi requirements and discussions of expectations, formulation review and comments, as well as electronic mail and written correspondence, including, but not limited to letters of deficiency.  The Program exercised oversight through the introduction of an improvement plan with faculty oversight, regular review of your performance by a clinical competency committee, and semi-annual meetings with you to review progress.

Therefore, Dr. Cioletti concluded that the decision of the Program Director not to promote you to the 3rd year of post-graduate training in July 2016 was reasonably made.  In addition, Dr. Cioletti's review of the decision made to fail you for the psychodynamic theory course did not substantiate claims of instructor bias.  Finally, the decision to fail you for at least the first two sections of the neuroscience course was also deemed a reasonable decision.

Accordingly, the decision to not promote you to the PGY3 year in July 2016, the decision to fail you in the psychodynamic theory course, and the decision to fail you for at least the first two sections of the neurosciences course are all upheld.

The GME Academic Improvement Policy states that the physician reviewer will:



**DR. CATAPANO DECLARATION
EXHIBIT #174**

GWU 003716

THE GEORGE
WASHINGTON
UNIVERSITY

WASHINGTON, DC

**Office of Graduate Medical Education**

- Review the request of the Resident
- Meet with the Resident
- Review the Resident's file
- Talk with the Program Director
- Consider extenuating circumstances
- Consult with others, as appropriate, to assist in the decision making process; and
- Make a determination whether the Resident received notice and an opportunity to cure, and the decision to take the Reportable Action (in this case, non-renewal) was reasonably made.

Dr. Cioletti reviewed all documents, including the following documents submitted by you: 1) a request to review the non-promotion decision on January 8, 2016; 2) a request to review the course failures on December 3, 2015; 3) a detailed response to the course failures on December 23, 2015; 4) attempts to meet with Dr. Dyer; 5) attempts to meet with Dr. Kels; 6) e-mails from Dr. Collins excluding you; and 7) PHP October attempts to communicate.  Dr. Cioletti met with you on January 21, 2016 and Dr. Catapano on January 20, 2016.  You were offered to suggest additional people for Dr. Cioletti to meet with at your meeting.  Dr. Cioletti researched the history of the psychodynamic theory course director's involvement in the course to follow-up claims of bias.

In addition, Dr. Cioletti consulted with Dr. Catalanotti, Internal Medicine Program Director, to review aspects of the program decisions while maintaining the residents' anonymity. Consultation was requested because Dr. Catalanotti is involved with graduate medical training, she is not part of the psychiatry department, and has a history of being a strong resident advocate.

The Reportable Action for Non-Promotion states that the Psychiatry Clinical Competency Committee determined that you were deficient in three core competency areas:
- Professionalism
- Interpersonal skills and Communication, and
- Systems-based Practice

The Reportable Action for Course Failures states that the Psychiatry Clinical Competency Committee determined that you were deficient in the additional area:
- Medical Knowledge

Dr. Cioletti verified that you had received notice of deficiencies in core competency areas during her review and interviews.  Dr. Cioletti's document review revealed that your file is replete with

2

GWU 003717

THE GEORGE
WASHINGTON
UNIVERSITY

WASHINGTON, DC

**Office of Graduate Medical Education**

documented instances of unprofessional behavior, medical knowledge gaps and interpersonal difficulties.  The review noted your responses to these faculty concerns, many of which you deny, but some you admit to.

In consideration of any extenuating circumstances that may have impacted the decision to issue the Letter of Non-Promotion, Dr. Cioletti inquired of you as to whether there were any physical, medical or emotional issues that may have affected your performance, and was advised by you that there was nothing significant in this regard. Inquires made to faculty members noted that you had missed time due to a medical illness, but you had not sought accommodation from the University, and the illness did not determine your reportable actions.

Under the Academic Improvement Policy, you have the right to request a final review by Jeffrey Akman, M.D., Vice President for Health Affairs and Dean of the School of Medicine and Health Sciences or his designee, within fourteen (14) days of the date of this letter. The final review is solely to determine whether the process set forth in the Policy was followed. Attached is a copy of the Policy.

If you have any questions, please feel free to let me know.

Sincerely,

Jeffrey S. Berger, MD, MBA
Associate Professor of Anesthesiology
Associate Dean & DIO, Graduate Medical Education

3



DEPARTMENT OF MEDICINE
at The GW Medical Faculty Associates

Division of General Internal Medicine
2150 Pennsylvania Avenue, NW, Suite 5-416 n
Washington, DC 20037

Phone: 202.741.2200          Fax: 202.741.2185

### Privileged and Confidential

February 22, 2016

Dr. Jeffery Berger, MD, MBA
Associate Dean for Graduate Medical Education
The George Washington School of Medicine and Health Sciences
Washington DC

Dear Dr Berger:

This letter is meant to serve as a summary of my review of two decisions by the
Psychiatry Residency Training Program in regards to Dr Stephanie Waggel, MD: to
extend Dr. Waggel's training period and repeat neuroscience and psychodynamic
courses.  These letters were given to Dr Waggel on November 19, 2015 and
December 10, 2015 respectively, and she submitted a request to appeal these
decisions to the Associate Dean of Graduate Medical Education within the fourteen-
day time period specified in the Academic Improvement Policy.
The aforementioned policy states the reviewer will:

- Review the request of the Resident
- Meet with the Resident
- Review the Resident's file
- Talk with the Program Director
- Consider extenuating circumstances
- Consult with others, as appropriate, to assist in the decision making process;
  and
- Make a determination whether the Resident received notice and an
  opportunity to cure, and the decision to take the Reportable Action (in this
  case, non-renewal) was reasonably made.

I have reviewed all the documents provided to me, and I have met with Drs. Lisa
Catapano and Lori Kels (the Program Director and Associate Program Director) and
Dr. Stephanie Waggel.  In addition, I also discussed additional clarifications with Dr.
Cheryl Collins regarding class expectations and evaluations as well as ACGME
recommendations in terms of rotation attendance.



**DR. CATAPANO DECLARATION
EXHIBIT #175**

GWU 003719

Regarding the two courses, neither syllabus explicitly addresses expectations for passing the class. In the Neuroscience class, Dr. Waggel scored significantly lower than her peers on the first two exams (if her scores are removed, class averages for both exams increase to 70 and 72). As the scores of the tests exist as feedback for performance, she had the opportunity to realize her deficit. Based on my interview with Dr. Waggel, it was clear to her that her grades on these two exams were below expectations.

The psychodynamic class syllabus discusses three mandatory classes, required readings, and that the course will be evaluated by attendance and performance feedback. According to the ACGME, residents are expected to attend 70% of a rotation; this was relayed to the residents by the program coordinator. In this case Dr. Waggel attended 58% (only one potentially explained by being post-call and four potentially due to her being on a leave of absence) while others missed at most three or four classes (76-82%). In addition, her graded formulations suggest below average comprehension of this subject material, with specific feedback given within a five-page feedback document to illustrate her deficiencies and need for improvements, including: lack of understanding of psychodynamic concepts, missed class time, inability to facilitate class discussion on assigned readings, class contributions that did not demonstrate comprehension of the psychodynamic points – preventing learning in weakness areas, core psychodynamic principles in formulations are not addressed satisfactorily (an example of a fully formulated assignment was provided for contrast), such as applying psychodynamic ideas and addressing emotions and behaviors in addition to thoughts. In my reading of this comprehensive feedback document, it does not appear bias is playing a part in Dr. Collins's grading since so many specific examples of deficiencies were provided. Therefore, adequate comprehension and display of the knowledge and skills set in this course were not met.

Finally, I will address the clinical-based letters of deficiency. Prior to her first letter of deficiency, Dr. Waggel had documentation of concern in the following areas:

- Patient care:
    o Deficits in patient care—fails to recognize severity of threat to patient safety with specific errors (gave a patient >50 units of Lantus but not home meds); fails to complete orders/documentation prior to leaving work/does not ensure someone else will do it (email documentation from Dr. Malik on July 31, 2014)
    o Lack of motivation, initiative and interest in the care of her patients (email documentation from Dr. Malik on January 2, 2015)
    o Not ready to be in the hospital alone managing medicine patients. Serious medical errors, including management of CT findings and troponin results. Unable to triage phone calls and required redesign of entire team to remove Dr. Waggel from responsibilities (verbal feedback from Dr. Prior to Dr. Waggel documented in email on March 6, 2015)

- o Worry about her ability to function autonomously and manage complicated patients (verbal feedback from Dr. Mehta to Dr. Waggel documented in email on March 19, 2015 and "remediation plan" discussed)
- o Still has difficulty dealing with difficult patients and taking herself out of difficult situations (verbal feedback from Dr. Ayanian to Dr. Waggel documented in email on April 14, 2015)
- Professionalism:
  - o Demonstrates frequent unprofessional behavior—cites specific residents are more enjoyable to work with, does not take responsibility for errors/near misses that are significant patient safety issues, expresses open displeasure when asked to complete a patient care tasks, resistance to feedback and little improvement following constructive criticism (email documentation from Dr. Malik on July 31, 2014)
  - o Has come to work wearing provocative clothing, making staff uncomfortable (email documentation from Dr. Malik on January 2, 2015)
  - o Sits in resident room and doesn't check in for rounds or meetings; needed to be tracked down; shows up late daily and leaves meetings without permission (email documentation from Dr. Malik on January 2, 2015)
  - o Concerns for inappropriate attire. At least 3 complaints from patients, calling Dr. Waggel unprofessional or "mean" and becoming very angry or offended by her interaction with them. Noted to be sleeping, impaired in call room (email documentation from Dr. Chang on May 18, 2015; Dr. Waggel acknowledged feedback in determining that she had taken benzodiazapines accidentally on that day with follow-up email to Dr. Catapano)
- Medical knowledge:
  - o Worry about her ability to function autonomously and manage complicated patients (verbal feedback from Dr. Mehta documented in email on March 19, 2015)
  - o Significant gaps in med knowledge, medical decision making—her weakest point; required numerous feedback sessions, constant supervision from resident, and did show some improvement—"if progresses on the same tract, she might be able to do this skill independently from a resident" (verbal feedback from Dr. Ayanian to Dr. Waggel documented in email on April 14, 2015)
- Interpersonal communication:
  - o Is openly disrespectful to other care team members (told staff to "think really hard" and "try not to ask stupid questions") (email documentation from Dr. Malik on July 31, 2014)
  - o Using phone and been caught rolling eyes during meetings/conversations with patients and staff (email documentation from Dr. Malik on January 2, 2015)
  - o Communication with nursing and consult services (verbal feedback from

Dr Prior documented in email on March 6, 2015)
- Fatigue management:
  - Trouble focusing at work (email documentation on May 1, 2015 between program directors)
  - Came to work impaired and found passed out in the call room; reportedly took Ativan instead of her Ritalin. She was asked to leave medicine service and not return (May 14, 2015).

These email documentations of verbal feedback (and some written feedback in evaluations) spans psychiatry and internal medicine. There is additionally an email from emergency medicine with concern regarding poor clinical performance and that she was not on par for an intern, despite seeming like she wanted to do a good job. Her first letter of deficiency was written on July 15, 2015 for a missed ED shift on June 10, 2015 when Dr. Waggel did not give proper notification of her absence. A plan at that time was made for remediation and the right to seek further action if not remediated, including the potential for the Program to seek further action (including termination) if she should continue to exhibit deficiencies. This letter was written shortly before a medical leave of absence and was not given to Dr. Waggel until August 5, 2015 during her semi-annual meeting, which also reviewed concerns about her professionalism and patient care. Reportedly, there was trouble arranging a meeting with Dr. Dyer (part of her remediation plan), initially meeting six weeks after the letter of deficiency (September 3, 2015), with evaluations from Dr. Dyer stating concerns regarding remediation due to lack of insight, potentially inaccurate accounts, and lack of recognition that she is deficient in the competencies noted in the letter of deficiency. Similar concerns for lack of insight into feedback were echoed by several psychiatry faculty independently in email documentation.

Additional concerns that were raised about Dr. Waggel's performance included:

- Patient Care
  - CL service attending call from August 10, 2015: Notes were lacking information, disregarded plan to not discharge patient until exam could be performed and recommended discharge noted by EMed physician in chart, and interpersonal issues with other services. (email documentation from Dr. Torres-Llenza, noting "I did speak with her about most of these and gave her feedback." on August 28, 2015)
  - "...The plan for you to have more support and supervision on call when you return to GW in October." (email documentation from Dr. Catapano to give notice of deficiency on September 21, 2015)
- Professionalism
  - Dr. Waggel claimed she, alone, physically restrained an out of control patient. Dr. Catapano told her that, "if she is not able to monitor her health and fatigue better, we will have to put restrictions on her work and/or call schedule to protect her. (email documentation from Dr. Catapano meeting on August 26, 2015 re: Dr. Waggel call on August 25,

2015)
- o Dr. Waggel to Intern: "...I instead received a lengthy lecture about the tone of my voice and how it can be negative." (email documentation August 26, 2015). This noted to be unacceptable by Dr. Kels (email documentation August 27, 2015) and the Chief Residents were instructed to, "... follow up with Stephanie about it."
- Interpersonal Communications
  - o Email from Dr. Waggel on August 7, 2015: "...I immediately went to the Orange Team to apologize in person for the conversation we had on the phone," regarding a poor interaction with a PA on August 5, 2015.
  - o Text messages between Dr. Waggel and Intern: Dr. Waggel: "I have to take HIV prophylaxis because the HIV test was not ordered yesterday." "Thank you" "I really hope you aren't doing these things to me on..." Intern noted to Dr. Waggel that the patient had HIV testing 3 days prior to the possible incident and she is feeling "bullied" by Dr. Waggel. (email documentation on August 28, 2015)

Concerns were raised in August 2015 regarding Dr. Waggel's ability to manage busy nights, including a call night on August 25, 2015 that led to a root cause analysis by the George Washington University Hospital. Dr. Waggel was first notified, in a September email, that she would need additional oversight on-call at GW when Dr. Waggel returned October, in an email correspondence from Dr. Catapano. Three calls with senior oversight ensued and Dr. Waggel received extensive feedback on each occasion. Dr. Waggel did not appreciate the feedback value of the experience and complained on several occasions that the additional resident should be to split the workload necessitating a formal letter from Dr. Catapano on October 10, 2015, clarifying the improvement areas for feedback to be covered during these calls.

Following the completion of the root cause analysis in November, Dr. Waggel received a letter of deficiency on November 19, 2015, to formally outline an improvement plan for the previously noted deficiencies discussed with Dr. Waggel in August and September that had not been successfully remediated to this point. The improvement plan associated with this letter required Dr. Waggel reiterated that Dr. Waggel be put on "buddy call" to be given assistance by a senior resident, eventually changing to supervision by an attending. She is also held accountable for meeting with Dr. Dyer and producing a plan for improvement. In the November 19, 2015 letter of deficiency, Dr. Waggel is informed of continued deficiencies in the following areas:

- Patient care: management of patient aggression, including recognizing escalating aggression and demonstrating leadership in a Code Strong; use of 1:1 sitters; use of IM versus PO medications
- Interpersonal communication skills: presentations were disorganized and incomplete with presentations missing key information (timeline, reason for agitation, dose of medications, or medical condition). Communication with

the patient exacerbated situation instead of contained it.  Of note, other
documentations expresses concern with communication between Dr. Waggel
and nurses/social work.

- System-based care: lack understanding of inpatient discharge procedures
  (administrative discharge) and protocols for Code Strong.

There is also recognition of inadequate follow through in her remediation plan
outlined in the November 19, 2015 letter of deficiency, with late and inconsistent
follow up with chosen advisor Dr. Allen Dyer.  Because of these reasons, this letter
addresses that she will not be advancing to her PGY3 year on time.

It is also important to note that Dr. Waggel did have an extenuating circumstance
during this time in question. Dr. Waggel did require medical attention, including a
recommended time for recovery in July 2015, ending August 3, 2015. Also, the
Psychiatry RRC does allow up to six weeks of leave without requiring a delay in
promotion. This has been taken into account in this review; however, it is important
that Dr. Waggel be at an appropriate level for promotion in the aforementioned
competencies, illustrating that the missed time alone is not reason for postponed
advancement.  Her delay in promotion is due to concerns with meeting the expected
competencies at this level and not the time missed (which may have contributed to
the delay).  At this time, it does not appear this extenuating circumstance would be
reason to change her need for a prolonged residency.  When asked if additional
extenuating circumstances existed, she stated there were none.  To my knowledge,
Dr. Waggel has neither requested nor received accommodation from the University
for any extenuating circumstance that need be considered.

Dr. Waggel did provide additional documents that were added to this appeal
process:

- Communication efforts with Drs. Dyer and Kels to meet as part of her
  remediation plan.
- Concerns of bias from her psychodynamics professor, Dr. Cheryl Collins
- Concerns regarding inadequate notification and the inability to cure the
  deficiency regarding the decision to extend her promotion.

On review of these documents, Dr. Waggel does show considerable effort in
attempts to meet with Drs. Dyer and Kels, and this reason alone should not be a
reason to delay promotion.  Dr. Waggel also raised concerns about bias from Dr.
Collins; however, these concerns are not supported by the sheer amount of work Dr.
Collins put in to help Dr. Waggel with her second formulation and detailed accounts
of classroom deficiencies, demonstrating areas for improvement with examples. Dr.
Waggel brought up concerns regarding inadequate notification; she did receive
three prior letters of deficiency, including recognition that continued deficiencies in
these areas could result in further action, "including termination."  As Dr. Waggel's
feedback and evaluations continued to have concerns with patient care, medical

knowledge (through her courses), system-based care, and interpersonal communication skills, she has not met expectations for her post-graduate level, and these documents do not change this decision.

Dr. Catapano has recorded reports in her record of semi-annual meetings with Dr. Waggel as required by the ACGME. The notes of one of the meetings include professionalism weaknesses and a plan to follow-up with Dr. Dyer. In addition, semi-annual milestone reports to the ACGME note that Dr. Waggel is rated below the standard for her post-graduate year in Professionalism for multiple Milestones and for a Milestone in Interpersonal Skills and Communication. Notes from the Clinical Competency Committee suggest that Dr. Waggel was discussed for 30 minutes at the October 15, 2015 meeting. Dr. Catapano was to discuss concerns with Dr. Berger from GME following the meeting. With the semi-annual meetings, the clinical competency committee discussions and the consistent reporting of Milestones deficiencies to match the academic struggles, the program was adequately performing its oversight of the trainee.

In summary, I determine the following conclusions:

1. Neuroscience course fail: course failure decision and requirement to retake at least the first two exams upheld;
2. Psychodynamics course fail: course failure and requirement to repeat upheld;
3. Non-promotion to PGY3 year in July 2016: upheld.
4. Extenuating circumstances were considered and were not deemed to have impacted the decision to take Reportable Actions.
5. The decisions to take Reportable Actions were reasonably made, taking core competencies, as defined by the ACGME, into consideration and coursework performance.

It is not my role as the physician reviewer to determine whether the Psychiatry Program made the correct decision in extending Dr. Stephanie Waggel's training or requiring the two courses to be repeated, but that the decision was reasonably made. In reviewing this case, I was charged with determining that the Academic Improvement Policy was appropriately followed and whether there were any extenuating circumstances that affected her potential correction.

Sincerely,

Anne Cioletti, MD, FACP
Assistant Professor of Medicine
Associate Program Director, Internal Medicine Residency
Division of General Internal Medicine

GWU 003725

**Lisa Catapano**

| | |
|---|---|
| **From:** | Simons, Richard <rsimons@email.gwu.edu> |
| **Sent:** | Friday, March 25, 2016 12:19 PM |
| **To:** | Lisa Catapano |
| **Cc:** | Allen Dyer; Jeffrey Berger |
| **Subject:** | Waggel appeal |
| **Attachments:** | Waggel appeal final.pdf |

Lisa, please find attached my letter to Dr. Waggel regaring her appeal.  I am referring this matter back to you and your department.  The clinical competency committee will need to meet, review this resident's evaluations/concerns and make specific recommendations regarding this resident's progress.  Following that, I urge  you to meet in person with the resdent to review the committee's recommendations and any formal actions.  Thanks
Rich

Richard J. Simons, MD MACP
Senior Associate Dean for MD Programs
Professor of Medicine
The George Washington University School of Medicine and Health Sciences
2300 Eye Street, NW
Ross Hall, Suite 709
Washington, DC 20037

**DR. CATAPANO DECLARATION
EXHIBIT #176**

GWU 002568

**THE GEORGE
WASHINGTON
UNIVERSITY**

WASHINGTON, DC

Office of the Dean

March 25, 2016

Stephanie Waggel, M.D, M.S.
1230 23ʳᵈ Street, NW 909
Washington DC, 20037

RE: Appeal

Dear Dr. Waggel,

On March 10, 2016, I received email notice that you were appealing the recent decision of the physician reviewer appointed by the Associate Dean for Graduate Medical Education Office which upheld the decision of your program director that you were not on track to be promoted to PGY 3 in July 2016. In my role as Senior Associate Dean for MD Programs, I must determine whether the process set forth in the Academic Improvement Policy was followed.

I reviewed your email correspondence of March 10, 2016, and your attached appeal letter to me. In addition, I reviewed the letters of deficiencies from your Program Director, the report of Dr. Cioletti, your residency evaluations from your attendings, the documentation from your semi-annual reviews with your Program Director, and the minutes of the department's Clinical Competency Committee. Also, you and I spoke by telephone on March 14, 2016, at 8 am at which time we discussed this issue for approximately 45 minutes. I also had a 30 minute phone call with your Program Director, Lisa Catapano MD, and met in person with the Chair of the Clinical Competency Committee, Allen Dyer MD, MPH.

As outlined in the Academic Improvement Policy, the program director is to consult with the Clinical Competency Committee when deciding not to promote a resident to the next PGY level. However, the minutes of the department's Clinical Competency Committee meeting on October 23, 2016, do not include any mention of consideration to delay your promotion. In addition, Dr. Dyer confirmed that the Clinical Competency Committee made no recommendations about the status of your promotion during the meeting on October 23, 2016. Furthermore, there was no other meeting of the Clinical Competency Committee prior to your Program Director issuing the letter of deficiency dated November 11, 2016.

Accordingly, it is my opinion that the Program Director did not follow the Academic Improvement Policy in issuing the letter of deficiency informing you that you were not on track to be promoted in July 2016. Based on this, the letter of deficiency dated November 11, 2016, notifying you that you were not on track to be promoted should not have been issued in the absence of a recommendation by the clinical competency committee.

School of Medicine & Health Sciences
2300 Eye Street, NW | Ross Hall, Suite
t 202-994-2987 | f 202-994-0926 | w

**DR. CATAPANO DECLARATION
EXHIBIT #177**

GWU 002569

I am referring this matter back to your department and Program Director.  The Clinical
Competency Committee needs to meet to conduct a review of your performance and make
recommendations to your Program Director to determine your status in the program.

Sincerely yours,

Richard J. Simons MD MACP
Senior Associate Dean for MD Programs
Professor of Medicine

*PEER REVIEW PRIVILEGED*

**Clinical Competence Committee**
Friday, April 8, 2016
Department of Psychiatry
2120 L Street NW

Attendance:

Allen R. Dyer, MD, PhD, chair
Lisa Catapano, MD, PhD, Program Director, *ex-officio*
Eindra Khin Khin, MD,
Catherine Crone, MD
Lorenzo Norris, MD
Lori Kels, MD, absent on maternity leave
Victoria Anderson, Residency coordinator

The meeting came to order at 1:23PM

1. Dr. Dyer presented Dr. Catapano a Thanks-for-Doing-a-Thankless-Job award for four years of outstanding service.

2. Dr. Dyer announced changes in the structure of the CCC, making the Program Director an *ex-officio* member of the committee.

3. Minutes of the last CCC meeting held on October23, 2013 were unanimously approved.

4. The CCC again considered the performance review of Stephanie Waggel PGY-II resident. Dated February 9, 2016 and unanimously voted approval (Program Director, abstaining).

5. The Program Director, Dr. Catapano, reviewed the chronology relating to Dr. Waggel's performance through December 2015:

   a. Dr. Waggel received a Letter of Deficiency (LOD) from the Department of Psychiatry on July 15, 2015, for not showing up for an ER shift June 10, 2015.
   b. Dr. Waggel received another LOD on October 28, 2015 from Dr. Jeffrey Berger, Associate Dean for GME, for failing to submit required



DR. CATAPANO DECLARATION
EXHIBIT #178          GWU 001156

16

*PEER REVIEW PRIVILEGED*

documentation for hospital health forms despite having been granted extension of the deadline for submission.

c. Dr. Waggel received a third letter of deficiency on November 19, 2015, relating to an incident involving her handling of an agitated patient while she was on call. The incident resulted in a root cause analysis which identified deficiencies of knowledge, disorganized thought, and lack of insight.

d. In the fall of 2015, Dr. Waggel failed two courses, Neuroscience and Psychotherapy courses, resulting in a fourth LOD on December 10, 2015. This LOD informed Dr. Waggel that she would not be promoted to the PGY-III year.

e. Failed to comply with the improvement plans of the LODs

f. Because of concerns about patient safety as well as professionalism, she was taken off call duties in December, 2015.

6. Pursuant to the Office of Graduate Medical Education Academic Improvement Policy, Dr. Waggel appealed her non-promotion and failures of Neuroscience and Psychotherapy courses. Dr. Berger appointed a physician reviewer, Dr. Ann Coletti, who conducted an investigation and, on February 22, 2016, determined that the recommendation that the decision not to promote Dr. Waggel to the PGY-III year was reasonably made, and that the decisions not to pass her for the Neuroscience and Psychotherapy courses were also reasonably made.  Dr. Waggel subsequently appealed Dr. Coletti's determination to Richard Simons, M.D., Senior Associate Dean for M.D. Programs. On March 25, 2016, Dr. Simons determined that a decision not to promote Dr. Waggel to the PGY-III year should not have been issued in the absence documentation that the CCC made a specific recommendation to the Program Director to do so.  (At the time the program director was a member of the CCC and participated in the consensus decision; the PD is now an *ex-officio* member)

7. The following additional performance and misconduct issues that have arisen since January 2016:

a. There have been numerous examples of misrepresentation by Dr. Waggel, including telling a faculty member that she had been given permission by Dr. Catapano to attend his course, when she had not met the pre-requisite for the course and had not received permission from Dr. Catapano; misrepresenting to Dr. Berger that she had passed the Neuroscience course, when she had failed it; and stating that she had not been given any feedback about her performance, even though she had received four letters of

2

17

*PEER REVIEW PRIVILEGED*

deficiency, as well as numerous other written and verbal communications regarding her performance.

b.  There have been significant problems with getting Dr. Waggel's performance evaluations because she would not identify her supervisors in the Medhub system, resulting in the inability for her evaluation forms to be sent to her supervisors for each rotation.

c.  She claimed persecution from Fairfax based on prejudice in the evaluation system (even though she had not been evaluated because she had not entered her supervisors into the system).  Dr. Berger investigated and assured her that the Medhub system was secure and confidential.

d.  On February 15, 2016, Dr. Waggel was presented a notice of unprofessional conduct from Dr. Griffith, Department Chair, and Dr. Catapano. (Dr. Catapano was at a professional meeting and unable to attend the meeting with Dr. Waggel and Dr. Griffith.)  As a result of the notice of unprofessional conduct, Dr. Berger initiated an inquiry under the Office of Graduate Medical Education Resident Misconduct Policy.  After a complete review, Dr. Berger concluded that some of the instances described in Dr. Griffith's notice of unprofessional conduct constituted lapses in professionalism, while others rose to the level of misconduct.  He recommended that this CCC consider the incidents set forth in the notice of unprofessional conduct.

e.   There have also been patient care/ patient safety concerns regarding Dr. Waggel. For example, Dr. Mary Chappell, a psychotherapist on the inpatient unit, became concerned that Dr. Waggel's interaction with a patient and his family was odd and potentially damaging to them in their vulnerable circumstances.  Dr. Chappell conferred with Dr. Gandhi, who agreed with the concerns and decided that Dr. Waggel should not interact with the patient or his family.

f.  There have also been additional concerns regarding misrepresentations by Dr. Waggel. For example, on March 8, 2016, Dr. Waggel informed Dr. Berger that she was unable to meet that day to discuss misconduct concerns because she was on FMLA leave when, in fact, she had not yet requested FMLA leave.  She also told Dr. Berger that she informed Dr. Catapano that she intended to take medical leave when Dr. Catapano had not been informed of her intent.

*PEER REVIEW PRIVILEGED*

3

GWU 001158

18

8. The CCC reviewed all of these incidents and the supporting documentation. The CCC discussed that Dr. Waggel continues to demonstrate a lack of capacity to recognize her deficiencies and to make any attempt to remediate them. She has not at any point accepted feedback on a point on which she could improve, admitted room for improvement, and then put forth effort to do better. The clearest example of this was in her essay for Dr. Gandhi on patient safety on 6 South, but the curiosity and commitment to insight and self-improvement is lacking in every communication and face-to-face meeting.

9. Based on these significant deficiencies in performance and inability or unwillingness to remediate them, Dr. Khin Khin moved to recommend to the program director that the previous letters of deficiency and associated recommendation for non-promotion be re-affirmed and based on all of the documented concerns and the additional concerns to further recommend dismissal from the program. The motion was seconded and passed unanimously (program director abstaining).

10. Dr. Crone moved that it was the consensus of the committee that Dr. Waggel should not return to clinical duties for the remainder of her time here. She should have no further contact with patients. The motion was seconded and passed unanimously (program director not voting).

11. Dr. Norris inquired about the treat that Dr. Waggel made against Dr. Kels. Dr. Norris was very concerned and asked Dr. Catapano to elaborate. Dr. Catapano detailed that Dr. Waggel stated that she was going to find out her address so she could come to her house to force her to talk to her. Dr. Norris felt that (though this may have been an idle threat) it raised significant concerns for safety of staff and faculty and that upon dismissal, security should be notified at GW Hospital, SMHS, Fairfax, and MFA.

This portion of the meeting concluded at 3:21 PM


REDACTED

4

GWU 001159

19





PGY II



Stephanie Waggel

5

GWU 001160

20

REDACTED



Meeting adjourned at 5:16PM

6

GWU 001161

21



PSYCHIATRY & BEHAVIORAL SCIENCES

Stephanie Waggel, MD
1230 23rd St NW Apt 909
Washington, D.C. 20037

RE: Stephanie Waggel, MD Letter of Reportable Action- Dismissal

Delivery method: E-mail and registered mail

May 2, 2016

Dear Dr. Waggel,

The Clinical Competency Committee met at their regular semi-annual meeting on Friday, April 8, 2016. At this meeting, the Committee reviewed your current standing in the program, and progress to-date in your training, including:

-Four Letters of Deficiency; your acceptance of the improvement plans recommended within them; any progress or lack thereof in effectuating the improvement plans; and the subsequent appeals decisions;
-the memo of misconduct presented to you by Dr. Griffith on February 15, 2016, and Dr. Berger's April 11, 2016 letter evaluating those allegations;
-clinical evaluations;
-Dr. Griffith's action to remove you from patient care duties on March 17, 2016; and
-a continued pattern of unprofessional behaviors since the memo of misconduct in February, such as telling Dr. Berger, in an email on Tuesday, March 8, you were on medical leave and had notified all relevant parties (attendings, chief residents, coordinator, Program Director) when you had not yet applied for medical leave at that time and had not notified the Program Director.

The Committee reviewed Dr. Simons' appeal decision, which stated that, in his opinion, the Committee did not follow the Academic Improvement Policy when it recommended non-promotion in your Letter of Deficiency from November 19, 2016, because it is not documented that the Committee made a recommendation (to me, as the Program Director) that you not be promoted to PGYIII status next academic year. Following careful review of the original Letter of Deficiency from November 19, 2015, Dr. Berger's appeal review, and Dr. Simons' decision, the Committee recommended that the decision in that Letter of Deficiency be re-issued; specifically, that you not be promoted to PGYIII status in July, 2016.



DR. CATAPANO DECLARATION
EXHIBIT #179

GWU 001050



PSYCHIATRY & BEHAVIORAL SCIENCES
at the GW Medical Faculty Associates

2131 K Street, NW, Suite 600
Washington, DC 20037
phone: 202-741-2888 fax: 202-741-2889
www.gwdocs.com

The Committee further reviewed all of the above documentation, and expressed concern that you have not substantively engaged in a good faith effort to improve your clinical and professional performance over the last 6 months. Based on grave concerns about on-going deficiencies that fall both within Academic Improvement and also Misconduct that have been detailed in the aforementioned documents, the Clinical Competency Committee made a formal and unanimous recommendation to me that you be dismissed from our Psychiatry Residency Program.

The letter is to advise you that I have accepted the CCC's recommendation and to provide notice that you are hereby dismissed from the Psychiatry Residency Program.

The GW Misconduct Policy can be found at the following link:
http://smhs.gwu.edu/sites/default/files/GW%20GME%20Misconduct%20Policy.jb.6.27.pdf

The GW Academic Improvement Policy can be found at the following link:
http://smhs.gwu.edu/sites/default/files/GW%20GME%20Academic%20Improvment%20Policy.jb.6.27.pdf

You have 14 days from today, May 2, 2016 to appeal the dismissal decision under the Academic Improvement Policy. It is my sincere hope that you are able to overcome this professional setback and, at a future date, to realize your goals and have a meaningful career.

Lisa Catapano, MD, PhD
Residency Training Director

GWU 001051

**PRIVILEGED AND CONFIDENTIAL**

Resident Request for Review of Reportable Action

Resident:  Stephanie Waggel, MD, PGY 2, Psychiatry
Reportable Action:  Dismissal

Physician Reviewer:  Raymond Lucas, MD, Associate Dean for Faculty Affairs and Professional
Development, Associate Professor of Emergency Medicine

Interviews conducted by Dr. Raymond Lucas for the Resident Request for Review of the
Reportable Action in accordance with GME Academic Improvement Policy

---

**June 23, 2016**

Present at meeting:  Dr. Jeffrey Berger, Associate Dean for GME; Dr. Raymond Lucas,
Physician Reviewer; Dr. Lisa Catapano, Program Director, Psychiatry; Ms. Mary Tucker, GME
Director.

Dr. Jeffrey Berger opened the meeting by stating for the record that there will be no recording
made of this session. All agreed.

Dr. Berger stated the purpose of the meeting and reviewed the appeal process and the roles of
each person involved.  He reported that in compliance with the Academic Improvement Policy,
Dr. Waggel has requested this review within the 14-day timeline.  He stated that the purpose of
the review was to ensure that Dr. Waggel had received appropriate notice and an opportunity to
cure her deficiencies, and that the determination to dismiss her was reasonably made.

Dr. Lucas stated that he had reviewed Dr. Waggel's file and the information provided for him,
including the decision to terminate from the Clinical Competency Committee (CCC) minutes.
He asked Dr. Catapano how Dr. Waggel was notified of the deficiencies and whether she was
provided with the opportunity to improve.

Dr. Catapano stated that, for the Letter of Deficiency for the ER shift, Dr. Waggel was instructed
to meet with Dr. Dyer and to provide an attendance report for Dr. Dyer to present to the CCC.
This did not happen.  Dr. Waggel claims she reached out to Dr. Dyer by email and he was not
available.  Dr. Dyer says she did not reach out to him appropriately – communication did not
actually result in a meeting getting scheduled.  Dr. Waggel was not able to suggest availability or
be available at times suggested by Dr. Dyer. They emailed back and forth, but could not agree to
a meeting date/time.

Dr. Lucas then asked about the November 19 memo regarding the agitated patient and the Root
Cause Analysis at the Hospital.  Dr. Catapano reported that the remediation plan required Dr.
Waggel to write an essay about management strategies and for the "buddy call" shift to be
modified to include faculty supervision.  Initially, Dr. Waggel was to meet with Dr. Kels, but



**DR. CATAPANO DECLARATION
EXHIBIT #180**                                          GWU 003174

that was changed to Dr. Gandhi. The essay was written, but not submitted in time. Dr. Waggel did meet with Dr. Gandhi and she completed mock presentations for him. He provided feedback about these and about the essay. Regarding the essay, Dr. Gandhi determined that some parts were organized and others were not and that the overall tone showed that she had little insight into her deficiencies as outlined in the Letter of Deficiency from November 19.

Dr. Catapano explained that after a few buddy call shifts with senior residents present to observe and provide feedback to Dr. Waggel, a strategy employed for struggling residents, it was decided that Dr. Waggel should be heavily supervised by faculty during the day and should be removed from overnight call temporarily. The decision to remove Dr. Waggel from overnight call followed concerns about Dr. Waggel's honesty based on several instances in which Dr. Waggel lied to faculty. These instances of lying led Dr. Catapano to believe that Dr. Waggel would not relay correct information about patients while on call, if left alone in the hospital. This was perceived to be a risk to patients and as a result, she was removed from the call schedule until it was determined that her performance and professionalism were satisfactory for overnight coverage.

Dr. Catapano also stated that there were very serious concerns from the Medical Director of the Northern Virginia Mental Health Institute (NVMHI), who is a long-time faculty member. Dr. Catapano noted that she did receive a good evaluation of Dr. Waggel from an attending faculty member following the rotation; however, while on the rotation, the Medical Director did not give Dr. Wagggel any intakes to process nor any tasks that had the potential to harm a patient. Her schedule and role were modified and she was given additional help based on his concerns for her performance that Dr. Catapano documented at the time of their discussion.

Dr. Lucas then discussed the Letter of Deficiency for the failed courses. Dr. Cheryl Collins initially failed Dr. Waggel, but when Dr. Waggel told Dr. Collins that failing her course was the only thing preventing her from promotion, Dr. Collins reconsidered her decision and called Dr. Catapano. Only after Dr. Catapano notified Dr. Collins that her course was not the only reason that Dr. Waggel would not be promoted did Dr. Collins realize that Dr. Waggel had misrepresented the situation. Dr. Waggel missed significant time in both the Psychodynamic Theory and the Neuroscience courses. She did not understand major concepts and scored failing grades on examinations, failing both courses. Due to course failures and absences, Dr. Waggel would be required to repeat most PGY 2 didactics. [The final Neurosciences exam grade would determine if Dr. Griffith would permit Dr. Waggel to get some credit for the third part of the Neurosciences course.]

Regarding other rotations, Dr. Waggel received a good evaluation from the attending at at away rotation where she was on a rotation that is highly supervised. However, in early March, on the GW Clinical Liaison service with a delicate patient, a psychologist witnessed her work and reported that she should not care for the patient because her clinical skills were inadequate to manage the case. Dr. Gandhi was on service as the supervising faculty and agreed with the assessment. As a result, Dr. Griffith decided to remove Dr. Waggel from clinical service pending the resolution of all appeals and reportable actions.

2

GWU 003175

Dr. Catapano reported that Dr. Waggel has been given feedback regarding her inadequate performance. Her schedules were frequently modified, at the request of Dr. Waggel, to give her additional help for therapy sessions and medical appointments, and she has been highly supervised.  Dr. Catapano reports that in her day-to-day work in a highly supervised setting she can perform adequately.  Dr. Catapano believes Dr. Waggel was given notice and provided with an opportunity to cure her deficiencies.  She has not demonstrated any improvement over the course of the year.

Dr. Catapano stated that the main area of concern is Dr. Waggel's lack of insight and inability to know her limits and to accept feedback.  She must be able to use reasonable judgment to manage crisis.  The program tried to work to get her back on call but this could not be accomplished because there is a lack of trust in her ability to manage patients.

Dr. Waggel was not tested for drug or alcohol problems and she did not undergo a fitness for duty evaluation.

When asked about extenuating circumstances, Dr. Catapano relayed that Dr. Waggel's health issues may have played a role in her progress as they led to absences; however, Dr. Waggel's lack of acceptance of feedback and lying to improve her status do not appear to be related to extenuating circumstances.

Dr. Berger reported that a Letter of Deficiency has not been issued yet for the Misconduct investigation that found misconduct related to several misrepresentations by Dr. Waggel to faculty.  Dr. Berger asked Dr. Catapano if she has had other trainees who have been given more than two letters of deficiency, to which she responded no.  Dr. Catapano mentioned that Dr. Waggel's performance was well outside the norm for trainees, and none had previously been found to have engaged in misconduct prior to Dr. Waggel.

Dr. Catapano reported that, recently, following her dismissal from the program and subsequent appeal, Dr. Waggel came to the resident retreat.  She arrived roughly 4 hours late and tried to gain entrance, disrupting the event.  Dr. Catapano had to ask her to leave and the event, typically an exciting time to plan for the year to come, took a somber tone as many residents were angry that Dr. Waggel came, and others were confused and upset for Dr. Waggel.  Dr. Catapano mentioned that it has been very hard to maintain the morale of the department as Dr. Waggel has consistently been complaining about the program to her peers and the program leaders cannot discuss Dr. Waggel's situation to clarify inaccuracies.

Dr. Catapano stated that the most difficult thing has been the level of destruction related to the dishonesty of Dr Waggel, which she believes is relevant to her capacity to be a physician. When asked if Dr. Waggel played a role in Dr. Catapano's decision to resign as program director, Dr. Catapano responded yes and relayed that Dr. Kels is also stepping down as associate director.

3

GWU 003176



THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

SCHOOL OF MEDICINE AND HEALTH SCIENCES

OFFICE OF FACULTY AFFAIRS

PRIVILEGED AND CONFIDENTIAL

July 6, 2016

Dr. Jeffrey Berger
Associate Dean for Graduate Medical Education
School of Medicine and Health Sciences
The George Washington University

Dear Dr. Berger,

This letter is my review of the appeal request from Stephanie Waggel, MD, on May 15, 2016 regarding the decision to dismiss her from the Psychiatry residency program (Dismissal Letter of Notification on May 2, 2016). As outlined in the GW Graduate Medical Education Academic Improvement and Due Process policies, the following items formed the basis of my review:

1. A review of the file of Dr. Waggel provided by your office.  This included copies of relevant policies; Dr. Waggel's residency application and contract; Letters of Deficiency, DIO correspondence and Reportable Actions; appeal requests (including the current one), supporting documents and decisions; misconduct investigation and decision; Department of Psychiatry clinical competency committee (CCC) minutes, milestones and related correspondence; evaluations of Dr. Waggel; documentation of feedback related to issues arising on call, during seminars and other components of the program; leaves of absence; documentation of non-compliance issues related to didactics attendance, duty hours, health clearance procedures and the MedHub evaluation process; copies of cell phone texts and emails between Dr. Waggel and chief-residents and co-residents in the Psychiatry program; and complaints from a citizen of the Foggy Bottom community.

2. An interview with Lisa Catapano, MD, Psychiatry residency program director (PD) at the time of the decision to dismiss Dr. Waggel. Dr. Berger and Mary Tucker, Director of Office of Graduate Medical Education, were present for this meeting. In addition to clarifying information, I specifically inquired about extenuating circumstances.

3. An interview with Stephanie Waggel, MD, the appellant. Dr. Berger and Mary Tucker were present for this meeting. In addition to clarifying information, I specifically inquired about extenuating circumstances.

Pursuant to the above referenced policies, this formed the basis of my determination of whether Dr. Waggel received sufficient notice and an opportunity to cure any deficiencies and if the decision to dismiss was reasonably made.



DR. CATAPANO DECLARATION
EXHIBIT #181

1

ROSS HALL, SUITE 719

56 • FAX 202-994-9994

GWU 003476

**Evidence of Notice**

According to the related policies, residents shall initially receive structured feedback in the forms of verbal feedback, regular rotation evaluations, recommendations from the CCC and the like. In summary, her structured feedback is mixed. There are rotation evaluations that rate her at or above the level of expected performance in nearly all domains. She has been rated at level 1 (expected for entry into program) or 1.5 in nearly all of her milestone evaluations. However, the number of evaluations in MedHub is limited and it is documented that Dr. Waggel's failure to input the names of her supervising attendings hampered the ability to obtain a larger number of evaluations, and at times the CCC relied on verbal and emailed evaluations to the faculty and PD.

There is ample documentation in the file that Dr. Waggel received verbal and other direct feedback about performance deficiencies related to patient care, medical knowledge, professionalism and interpersonal communication. Furthermore, there is a formal memo from the Department Chair to Dr. Waggel dated February 15, 2016, detailing several concerns of unprofessional conduct. And finally there are a total of five formal letters of deficiency delivered to Dr. Waggel from the GME office and Program Director.

In my interview with Dr. Waggel she acknowledged getting the above feedback; however, Dr. Waggel felt she was overly scrutinized by the faculty compared to other residents. She believes the content of the letters of deficiency to be false.

Based on my review, the requirement of sufficient *notice* of performance deficiencies has been met.

**Evidence of opportunity to cure**

The formal letters of deficiencies and other communications to Dr. Waggel described expected behaviors and/or described an improvement plan for Dr. Waggel to have an opportunity to cure her performance deficiencies. The improvement strategies offered by the department over the past year have included:

- A buddy-call program where chief residents would help her organize workflow, improve communication, optimize patient hand-offs and provide coaching on how to manage acute situations on call

- Assignment of extra attending supervision while on call with a requirement to check in frequently throughout the night

- Removal from night call with enhanced level of attending supervision during daytime patient care activities for enhanced monitoring and feedback

- Assignment of a faculty mentor to discuss strategies for improvement with regards to professionalism

- Writing an essay on the topic of managing patient aggression in the inpatient setting with follow up to discuss the learning points

- Assignment of a faculty mentor to assist in how to organize patient presentations

2

GWU 003477

- Non-promotion to the third postgraduate year (PGY) level to allow re-taking of the failed didactic courses, with an opportunity for early promotion once she demonstrated competency of all PGY 2 level rotations.

It should be noted that portions of these remediation strategies were difficult to implement. Dr. Waggel has documented difficulties in arranging meetings with her assigned faculty mentors, Dr. Dyer, Dr. Kels and then Dr. Gandhi, despite her efforts. Dr. Dyer documents eventually meeting with Dr. Waggel, albeit late, according to the terms of the first letter of deficiency, to discuss improvement strategies related to professionalism. He documents in writing that she seemed to have little insight on the impact of her behaviors and frequently digressed to describe shortcomings of others and of the program. He felt that further remediation attempts related to professionalism would be difficult to develop due to Dr. Waggel's inability to understand that she even has a problem with professionalism.

Dr. Kels and Dr. Waggel never met as planned. Dr. Gandhi did meet with Dr. Waggel to review her essay and to practice patient presentations as outlined in her remediation plan.

The buddy call system and enhanced faculty oversight on call eventually were not successful strategies because the program director ultimately decided to take Dr. Waggel off the overnight call schedule completely. According to Dr. Catapano, this decision was made because of growing concerns over Dr. Waggel's truthfulness. Faculty was uncomfortable with the extra call-ins to the overnight attending as a viable strategy because they did not trust what she was saying anyway. Therefore Dr. Waggel was removed from call duty altogether and only performed patient care closely supervised by attending physicians during the day, with the hope of ultimately reintroducing Dr. Waggel to overnight call when performance improved sufficiently.

Although not documented as part of her remediation plans, Dr. Catapano described modifications of Dr. Waggel's work assignment to continue to allow for enhanced observation and feedback on other rotations in hopes of successful remediation. At the Northern Virginia Mental Health Institute rotation the medical director raised concerns to Dr. Catapano regarding Dr. Waggel's patient care. Her assignment was modified such that she was not allowed to perform patient intake assessments as residents normally do there and received increased supervision. She received an acceptable end-of-rotation evaluation from another faculty member there, although the work on which she was evaluated was less independent and more highly supervised than typical for residents at her level.

Additionally, modifications were made on the Children's National Medical Center rotation. Dr. Waggel was not allowed to take overnight call on the first two weeks of the rotation to ensure she was meeting clinical expectations before giving her more patient care responsibility. It is documented that Dr. Catapano pro-actively reached out to the director of the Children's rotation to request them to accommodate Dr. Waggel's weekly psychotherapy, and Dr. Cullins at Children's indicated she was happy to do it. The correspondence documenting this suggests the program sincerely wanted Dr. Waggel to succeed and was trying to find ways to accomplish that.

Although the decision for non-promotion to the PGY-3 level is viewed as "punishment" by Dr. Waggel, the opportunity to repeat failed didactic portions of the PGY-2 year and to be promoted early and off-cycle had she been able to demonstrate certain competencies was a major opportunity for her to cure her deficiencies. However, given Dr. Waggle's inability to have insight into her deficiencies she appealed this decision. Her appeal was upheld by the Dean's office based upon a procedural error in due process

3

despite the judgement by an independent faculty reviewer that it was entirely reasonable. It is my opinion that the delayed promotion and opportunity to retake failed coursework was a sincere offer by the program to remediate and probably was the single best chance for Dr. Waggel to move forward and ultimately to succeed in her psychiatry training at GW.

The program offered numerous opportunities to cure deficiencies related to patient care and medical knowledge as described above. The strategies to deal with deficiencies in professionalism, and particularly perceptions that Dr. Waggel was untruthful were: 1) point them out to Dr. Waggel, 2) articulate expected behavior, 3) to meet with Dr. Dyer, and 4) refer to the GME office for a misconduct investigation and further recommendations. The strategy to meet with Dyer was sound, as he is a national expert in ethics and quite qualified to coach someone on these issues. However, their inability to meet in a timely fashion, and Dr. Waggel's inability to have insights and acceptance that she has problems related to professionalism stymied this strategy. The GME office conducted a misconduct investigation, concluded that misconduct had indeed occurred and drafted another letter of deficiency to Dr. Waggel that included a remediation plan on this matter. However, it was during this timeframe that Dr. Waggel was dismissed from the program on the recommendation of the CCC, so the letter of deficiency and remediation plan was never delivered to her and is pending the outcome of this current appeal.

I believe the program faculty can be faulted for not meeting with Dr. Waggel in a timely fashion in order to accomplish parts of her remediation plans. However, when evaluating the overall attempts and accommodations that the program afforded to Dr. Waggel in the past year, I believe that the requirement to provide sufficient opportunity to cure her deficiencies was met.

### Evidence of extenuating circumstances
Both Dr. Catapano and Dr. Waggel suggested that Dr. Waggel's health issues may be an extenuating circumstance. From Dr. Waggel's perspective she believes that the program was 'resentful' of her missed time off to deal with her health issues and that this is the basis of her enhanced scrutiny compared to other residents and was a source of bias by the administrators of the program against her. She seems to feel demoralized by her attempts to stick up for herself to attend to her health needs. These perceptions seem to be the source of her assertions that the information in her letters of deficiency is false and that everything is 'stacked against her.'

Dr. Catapano described, and Dr. Berger and Ms. Tucker corroborated, that Dr. Waggel applied for time off under the federal Family and Medical Leave Act (FMLA) and was granted it. Part of her FMLA leave was intermittent. While the program fully intended to comply with Dr. Waggel's granted leave, they notified Dr. Waggel that, given the patient care responsibilities inherent in clinical training and the impact of one resident's leave on other residents' schedules, she would need to inform the program in a timely manner of scheduled appointments, and that she would also be required to follow usual procedures if she unexpectedly needed to call in sick. There seems to have been much misunderstanding between the program and Dr. Waggel on how this was to be accomplished and communication on these matters was a continual source of tension. Nevertheless, it does not appear that Dr. Waggel ever missed a single health appointment due to demands of the program. And as evidenced by the email from Dr. Catapano to Dr. Cullens at Children's hospital, it appears that the program was earnestly trying to accommodate Dr. Waggel's health appointments.

Dr. Berger and Ms. Tucker indicated that Dr. Waggel was given information on how to apply to the Equal Employment Opportunity (EEO) office for work accommodations if she or her doctor felt they were

4

necessary in light of her health problems. She never applied for any accommodations under this mechanism.

While I feel that Dr. Waggel's health problems were clearly an issue entangled with her clinical performance problems, professionalism problems and misconduct, it does not appear to me that they were the source of any bias against her. The language and tone of email communications to Dr. Waggel from the program were very caring and supportive and the PD accommodated her needs to take medical leave when required. In that regard they are not an extenuating circumstance that materially justifies overturning the CCC decision to recommend dismissal.

**Reasonableness**
Having a career as a medical educator for over twenty years, and having served as a residency program director myself, I feel well-qualified to render an opinion on the reasonableness of the decision by the CCC to recommend, and the PD to carry out, dismissal of Dr. Waggel from the residency program.

In short, the recommendation is entirely reasonable. From her intern year and well into the PGY-2 year, there is an abundance of documentation of performance deficiencies related to patient care, medical knowledge, professionalism and communication. Receiving up to 5 letters of deficiencies in a single academic year is unprecedented at GW in my experience. The plans to remediate were sufficient and reasonable in my opinion for the typical resident who has insight and is amenable to remediation.

Unfortunately, Dr. Waggel seems to lack insight and was not amenable to feedback and remediation, particularly related to issues of professionalism. This further hampered sincere and sufficient efforts by the program to remediate her in other areas of patient care, medical knowledge and communication. This is apparent to me based upon the documentation provided and upon my meeting with her.  Dr. Griffith, the Department Chair, formally accused her of being deliberately untruthful in the workplace. Dr. Dyer, assigned as a mentor, documents that she says things that are not true or only partially true. Copies of text messages sent by Dr. Waggel to her co-residents are disturbing and disruptive. Professional lapses were identified and expected behaviors were described to Dr. Waggel and documented thoroughly. That should be sufficient remediation for someone who has insight and sees herself as a professional. Dr. Waggel's unchanging patterns of behavior related to professionalism are beyond the expectation of what can be reasonably remediated by a clinical training program.

The CCC minutes from April 8, 2016 clearly document that they gave ample consideration to Dr. Waggel's performance and her inability to remediate as a basis for the reasonable decision to recommend to the PD to dismiss her from the program.


Respectfully submitted,

Ray Lucas, MD
Associate Professor, Emergency Medicine
Associate Dean for Faculty Affairs and Professional Development

GWU 003480

**THE GEORGE
WASHINGTON
UNIVERSITY**

WASHINGTON, DC

**Office of Graduate Medical Education**

July 13, 2016

Stephanie Waggel, MD
1230 23rd Street, NW Apt 909
Washington, DC 20037

Dr. Waggel:

This letter serves as formal notification of the determination of Ray Lucus, M.D., who was appointed as the physician reviewer following your appeal request on May 15, 2016, pursuant to the GME Academic Improvement Policy ("Policy"), to review the following decision by your Program Director, Lisa Catapano, M.D on May 2, 2016: *notification of dismissal*.

The GME Academic Improvement Policy states that the physician reviewer will:
- Review the request of the Resident
- Meet with the Resident
- Review the Resident's file
- Talk with the Program Director
- Consider extenuating circumstances
- Consult with others, as appropriate, to assist in the decision making process; and
- Make a determination whether the Resident received notice and an opportunity to cure, and the decision to take the Reportable Action was reasonably made.

Dr. Lucas reviewed all documents provided, including your request to review and your file.  He conducted interviews with you and Dr. Catapano in the presence of Dr. Berger and Mary Tucker. Pursuant to the above referenced policy, the documents and interviews, as noted, formed the basis of Dr. Lucas' determination of whether you received sufficient notice and an opportunity to cure any deficiencies and if the decision to dismiss was reasonably made.

After a careful and thorough review, Dr. Lucas has determined that you were notified of academic deficiencies on numerous occasions.  Further, he has determined that you were given structured feedback and sufficient opportunity to cure deficiencies.  Dr. Lucas examined the possibility of extenuating circumstances and, failing to attribute an extenuating circumstance to the reasons for the decision to dismiss, concluded that the decision of the Program Director to dismiss you was reasonably made.  Please refer to the attached Reviewer Decision document.

Under the Academic Improvement Policy, you have the right to request a final review by Jeffrey



**DR. CATAPANO DECLARATION
EXHIBIT #182**

GWU 003486



**THE GEORGE
WASHINGTON
UNIVERSITY**

WASHINGTON, DC

**Office of Graduate Medical Education**

Akman, M.D., Vice President for Health Affairs and Dean of the School of Medicine and Health Sciences or his designee, within fourteen (14) days of the date of this letter. The final review is solely to determine whether the process set forth in the Policy was followed. Attached is a copy of the Policy, or it can be found at the following website:

http://smhs.gwu.edu/sites/default/files/GW%20GME%20Academic%20Improvment%20Policy.j b.6.27.pdf

If you have any questions, please feel free to let me know.

Sincerely,

Jeffrey S. Berger, MD, MBA
Associate Professor of Anesthesiology
Associate Dean & DIO, Graduate Medical Education

2

GWU 003487

**THE GEORGE
WASHINGTON
UNIVERSITY**

WASHINGTON, DC

Office of the Dean

August 10, 2016

To:  Stephanie Waggel, MD
     Psychiatry Resident

From:  Richard J. Simons MD, MACP
       Senior Associate Dean for MD Programs
       Professor of Medicine

       Re:  Appeal

On July 22, 2016, I received notice of your appeal of the decision to dismiss you from the
Psychiatry Residency Program. You were notified of this decision on May 2, 2016.  You have
exercised the right to request a final review.  According to the graduate medical education's
Academic Improvement Policy, my role is to determine if the processes set forth in this policy
were followed.

In reaching my decision, I have reviewed copies of your evaluations, letters of deficiency,
minutes of the department's Clinical Competency Committee, documentation related to the
milestones and documentation of events related to performance issues.  I also reviewed your
appeal requests as well as letters from Dr. Berger, our Associate Dean for Graduate Medical
Education.  Finally, I also reviewed the review report of Ray Lucas, MD, dated July 6, 2016, and
the letter from Dr. Berger on July 13, 2016, notifying you that Dr. Lucas had determined that
the decision to dismiss was reasonably made.

From my review of the documents, it is clear that you received feedback on numerous
occasions regarding unsatisfactory performance issues via both verbal and written
communication.  There are multiple formal "Letters of Deficiency" in your file related to
performance issues in the competencies of patient care, inter-personal and communication
skills, professionalism and systems-based practice.  Based on the documentation, you failed to
satisfactorily remediate the above deficiencies despite the program's recommendations and
strategies designed to assist you. The minutes from the program's Clinical Competency
Committee from April 8, 2016, outlined numerous performance and misconduct issues and
there was a unanimous decision to recommend dismissal from the program; you were notified
of such on May 2, 2016.

Per the Academic Improvement Policy, you had a formal review by an experienced and highly
respected faculty member who determined that the decision to dismiss was reasonably made,
and you received notification of such on July 13, 2016, by Dr. Berger.

**DR. CATAPANO DECLARATION
EXHIBIT #183**

GWU 003500

Based on my review of these documents, I conclude that both the program and the GME office followed the process outlined by our Academic Improvement Policy.  Accordingly, I am upholding the program's decision to dismiss you from the Psychiatry Residency Program.

cc: Jeffrey Berger, MD, Associate Dean, GME
     Eindra Khin Khin, MD, Program Director