# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEPHANIE WAGGEL,<br><br>         Plaintiff,<br><br>    v.<br><br>THE GEORGE WASHINGTON<br>UNIVERSITY,<br><br>         Defendant. | Civil Action No. 16-1412 (CKK) |

## MEMORANDUM OPINION
(November 9, 2018)

Plaintiff Stephanie Waggel is a former resident in the Psychiatry Residency Training Program of Defendant, The George Washington University. She alleges that through a series of actions culminating in her termination from the program, Defendant violated her rights under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA"), as well as their local analogues, the District of Columbia Human Rights Act, D.C. Code § 32-501 *et seq.* (the "DCHRA"), and the District of Columbia Family and Medical Leave Act, D.C. Code § 2-1401.01 *et seq.* (the "DCFMLA").

Presently pending before the Court is Plaintiff's [32] Motion for Partial Summary Judgment as to Counts I & II ("Plaintiff's Motion"). The Court shall issue a separate Memorandum Opinion addressing Defendant's [34] Motion for Summary Judgment, as well as its [41] Motion to Strike Portions of the Declaration of Dr. Stephanie Waggel, M.D. ("Defendant's Motion to Strike").

Upon consideration of the briefing,[1] the relevant legal authorities, and pertinent portions of the voluminous record in this matter,[2] the Court **DENIES** Plaintiff's Motion.

## I. BACKGROUND

A brief summary of the factual background will suffice before the Court delves into the details relevant to Plaintiff's respective claims. This case concerns Plaintiff's first and second years as a psychiatry resident, culminating in Defendant's termination of her residency effective August 10, 2016. *See, e.g.*, Pl.'s Stmt. of Material Facts for Which There Are No Genuine Disputes in Support of Her Mot. for Partial Summ. J., ECF No. 32-2 ("Pl.'s Stmt."), ¶ 1; Def.'s Resp. to Pl.'s Stmt. of Material Facts in Supp. of Pl.'s Mot. for Partial Summ. J., ECF No. 36-1 ("Def.'s Resp. to Pl.'s Stmt."), ¶ 1. Shortly after beginning her second year in the program, Plaintiff underwent surgery in July 2015 for the removal of a cyst on her kidney. *See* Pl.'s Stmt. ¶¶ 6, 7, 9, 13; Def.'s Resp. to Pl.'s Stmt. ¶¶ 6, 7, 9, 13. She took various kinds of leave from the program during her two years, including sick leave during the surgery and FMLA leave at other times. *See, e.g.*, Def.'s Stmt. of Material Facts as to Which There Is No Genuine Dispute, ECF No. 34 ("Def.'s

---

[1] The Court's consideration of Plaintiff's Motion has focused on the following documents:

- Mem. of P&A in Supp. of Pl.'s Mot. for Partial Summ. J. as to Counts I & II, ECF No. 32-1 ("Pl.'s Mem.");
- Def. George Washington University's [Corrected] Mem. of P&A in Supp. of Its Opp'n to Pl.'s Mot. for Partial Summ. J., ECF No. 38 ("Def.'s Opp'n"); and
- Pl.'s Reply Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. as to Counts I & II, ECF No. 40 ("Pl.'s Reply").

Where the parties have submitted corrected or simply late versions of materials, the Court has focused on those versions. *See, e.g.*, Min. Order of Sept. 28, 2018 (granting motions pertaining to certain corrected and late materials). The Court has generally resorted to Bates labeling where submissions otherwise lack clear page numbering.

[2] For one indication of the size of the record, note that Defendant's Motion for Summary Judgment contains an assertion of allegedly undisputed, material facts consisting of *977 paragraphs*, with associated citations to record evidence.

Stmt."), ¶¶ 230, 274, 531; Pl.'s Corrected Stmt. of Genuine Issues and of Counterveiling Facts, ECF No. 37 ("Pl.'s Resp. to Def.'s Stmt."), ¶¶ 230, 274, 531.  In the meantime, Defendant allegedly identified a number of problems with Plaintiff's performance in the program, which were documented in, among other places, four Letters of Deficiency and a Notice of Unprofessional Conduct.  *See, e.g.*, Def.'s Stmt. ¶¶ 744, 798-800; Pl.'s Resp. to Def.'s Stmt. ¶¶ 744, 798-800. Purportedly as a result of these deficiencies, aspects of Plaintiff's clinical duties were suspended multiple times, her promotion to her third year in the program was delayed, and she was ultimately dismissed from the program.  *See, e.g.*, Def.'s Stmt. ¶¶ 656, 726, 975, 977; Pl.'s Resp. to Def.'s Stmt. ¶¶ 656, 726, 975, 977.

Plaintiff filed suit on July 7, 2016.  Compl., ECF No. 2.  Her four-count Complaint alleges violations of the ADA and the FMLA, as well as comparable D.C. statutes.  *Id.*  Plaintiff now moves for summary judgment as to the first two counts, namely the ADA claim and its D.C. analogue, the DCHRA claim.  Pl.'s Mem. at 7.  She attributes her decision not to seek summary judgment as to the FMLA and DCFMLA claims to disputes of material fact.  *Id.*  A separate opinion, which also will issue today, shall resolve Defendant's motion seeking summary judgment as to all four counts.  Although the Court largely evaluates these motions separately, the Court— like the parties—draws upon materials submitted in connection with Defendant's Motion for Summary Judgment where such submissions facilitate the Court's consideration of Plaintiff's Motion.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences . . . drawn in his favor." *Anderson*, 477 U.S. at 255. "If material facts are at issue, or though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)) (internal quotation marks omitted). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III. DISCUSSION

Under the ADA, covered entities are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). That discrimination is further defined to include seven different types of activity, including the failure to reasonably accommodate a disability. *Id.* § 12112(b). Defendant has not disputed that it is an employer within the scope of the covered entity definition. *See* Pl.'s Mem. at 8 (citing 42 U.S.C. § 12111(5)); *see also* 42 U.S.C. § 12111(2). The DCHRA's prohibitions extend, in pertinent part, to certain employment acts performed "wholly or partially for a discriminatory reason based upon the actual or perceived . . . disability . . . of any individual." D.C. Code § 2-1402.11(a). Specifically, it is forbidden

> [t]o fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee[,]

when the employer has a discriminatory rationale. D.C. Code § 2-1402.11(a)(1).

Courts in this jurisdiction have applied the legal analysis developed for ADA claims to DCHRA claims as well. *See, e.g.*, *Giles v. Transit Emps. Credit Union*, 794 F.3d 1, 5 (D.C. Cir.

2015); *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583-84 (D.C. 2001) (deeming ADA precedent to be "persuasive" where "comparable sections of DCHRA" are concerned). Because the parties' arguments do not distinguish between the two statutes, the Court shall consolidate its analysis under the ADA. *See Minter v. District of Columbia*, 809 F.3d 66, 68 n.2 (D.C. Cir. 2015).

Plaintiff alleges that Defendant 1) failed to accommodate her disability, and 2) took a series of adverse actions in response to her disability. *See* Pl.'s Mem. at 6. Because the standards for these two types of disability discrimination claims differ, the Court shall deal separately with them below.

### A. Reasonable Accommodation Claim

Plaintiff's claim that Defendant did not accommodate her disability falls under 42 U.S.C. § 12112(b)(5)(A), which imposes liability on a covered entity for "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." In light of this language, the Court shall refer more generally to Plaintiff's claim as alleging a failure to make reasonable accommodation. The reasonable accommodation claim is but one type of alleged discrimination under the ADA that is enumerated in 42 U.S.C. § 12112(b). *See Haynes v. Williams*, 392 F.3d 478, 481 (D.C. Cir. 2004).

In this Circuit, courts evaluating reasonable accommodation claims do not apply the *McDonnell Douglas* burden-shifting framework applicable to certain other discrimination claims. *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 114 (D.D.C. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Barth v. Gelb*, 2 F.3d 1180, 1185-86 (D.C. Cir. 1993)); *see also Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). Rather, Plaintiff must establish by a preponderance of the evidence "that (1) she was a qualified individual

with a disability, (2) the [Defendant] had notice of her disability and (3) the [Defendant] denied her request for a reasonable accommodation." *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) (citing *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307-08 (D.C. Cir. 2010); *Barth*, 2 F.3d at 1186). "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings*, 198 F.3d at 861. A request for accommodation may trigger an "interactive process" to determine what accommodation would be reasonable. *Minter*, 809 F.3d at 69.

Plaintiff argues that she was a qualified individual disabled by renal cancer, whether active or in remission; that Defendant had notice of that disability; and that she requested but was denied accommodation. *See* Pl.'s Mem. at 9-20. Each of the first two prongs of Plaintiff's argument is subject to some dispute; whether those disputes involve genuine issues of material fact is less readily apparent. Strictly for purposes of this analysis, the Court shall assume, *arguendo*, that Plaintiff satisfies the first two prongs. It is clear that Plaintiff is unable to discharge her burden as to the third prong in at least two respects: whether Plaintiff ever made a request for reasonable accommodation, and whether any such request was denied.

Plaintiff argues that she made a request for accommodation at two times, both before and after her July 2015 surgery. *Id.* at 4, 13-14. Plaintiff argues at various points that she made her reasonable accommodation requests through Defendant's Office of Equal Employment Opportunity ("OEEO") and through members of the Psychiatry Residency Training Program's administration. The Court shall consider each of these alleged avenues in turn.

### 1. Request Through Defendant's Office of Equal Employment Opportunity

The evidence is not "significantly probative" that Plaintiff ever requested a reasonable accommodation through Defendant's OEEO. *Anderson*, 477 U.S. at 249-50. In her opening brief, Plaintiff effectively acknowledges that she failed to do so: "Plaintiff communicated her

accommodation requests to several offices, including one *she thought* was the Equal Opportunity Office." Pl.'s Stmt. ¶ 27 (emphasis added). The portion of her deposition cited in support says nothing about a request for accommodation or the OEEO. *See id.* (citing Pl.'s Mot. for Partial Summ. J. as to Counts I & II, Ex. E, ECF No. 32-4 (Dep. of Dr. Stephanie Waggel at 6:2-5 ("Waggel Dep."))). Defendant likewise disputes the notion that she ever made contact with its OEEO to request an accommodation. Def.'s Resp. to Pl.'s Stmt. ¶ 27.[3]

At some time prior to the incidents at issue in this case, Defendant evidently foresaw that some of its employees would seek reasonable accommodations under the ADA. Defendant established a formal mechanism—its OEEO—at least in part for the purpose of fielding such requests. *See, e.g.*, *id.* ¶ 22 (claiming that Defendant's "policies and procedures" require submission of "any request for formal accommodation" to OEEO). Plaintiff is correct, in general, that a request for reasonable accommodation need not use "magic words." Pl.'s Mem. at 12-13 (quoting *Floyd v. Lee*, 85 F. Supp. 3d 482, 506 (D.D.C. 2015)) (internal quotation marks omitted). The permissible informality of a request, however, does not necessarily excuse a failure to use the correct procedure. "[O]nce an employer has established a fixed set of procedures to request accommodations, the plaintiff-employee's failure to file a request through this procedure could preclude a claim for failure to accommodate." *Davis*, 26 F. Supp. 3d at 114 (citing, e.g., *Edwards v. EPA*, 456 F. Supp. 2d 72, 103 (D.D.C. 2006)).

In *Chenari v. George Washington University*, the D.C. Circuit found that the defendant university had done enough to make the plaintiff aware of the process for applying for reasonable

---

[3] Defendant alleges that Plaintiff only made contact with the OEEO on April 28, 2016, when she claimed disability discrimination. *See* Def.'s Stmt. ¶¶ 931, 937-47. Plaintiff does not dispute making that contact, but disputes the assertion that she did not visit the OEEO at any other time, namely in September 2015. *See* Pl.'s Resp. to Def.'s Stmt. ¶¶ 931, 937-47.

accommodation of a disability under the Rehabilitation Act at the time that he was a medical student.[4] *See* 847 F.3d 740, 748-49 (D.C. Cir. 2017). The university had an office responsible for processing reasonable accommodation requests, had made students aware of this office through its associate dean and through a manual for first-year students, and had maintained a website informing students of the process for lodging reasonable accommodation requests. *Id.* Moreover, despite the absence of any proper request, the university had offered plaintiff an accommodation, which he did not pursue. *Id.* at 748. The D.C. Circuit had no trouble concluding that further efforts were not required: "[T]he University not only twice offered [the plaintiff] counseling, but also, through its Disability Office and that office's website, offered all students a procedure for obtaining any reasonable accommodation they might need." *Id.* at 749.

Like *Chenari*, this is a case in which Defendant went to some lengths to make sure that Plaintiff was aware of the established means for seeking accommodation under the ADA. Plaintiff's own exhibit, submitted in opposition to Defendant's Motion for Summary Judgment, reflects that, at least as early as May 18, 2015, Plaintiff was expressly advised that she could apply for reasonable accommodation of a disability *through the university's OEEO*. On that date, the Leave of Absence Program Administrator emailed Plaintiff to say that while she was not eligible yet for FMLA leave, she had another option: "If you believe you are a qualified individual with a disability and would like to request a reasonable accommodation (such as medical leave) under

---

[4] Courts in this jurisdiction have looked to Rehabilitation Act precedent when analogous provisions of Title II of the ADA were at issue. *See Chenari*, 847 F.3d at 746 (citing, e.g., *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 n.2 (D.C. Cir. 2008) ("cases interpreting either are applicable and interchangeable")). Although the comparison is less straightforward, courts evidently also do so for ADA Title I claims of failure to provide reasonable accommodation. *See id.* at 747 (citing *McElwee v. County of Orange*, 700 F.3d 635, 640 & n.2 (2d Cir. 2012); *Am. Council of the Blind*, 525 F.3d at 1260 & n.2)) (tracing connection between Rehabilitation Act and Title I through Title II precedent).

the Americans with Disabilities Act (ADA), please contact the Office of Equal Employment Opportunity." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. AAA, ECF No. 35-8, at GWU 003178; *see also* Def.'s Resp. to Pl.'s Stmt. ¶ 22. That email furnished the contact information for the OEEO and "recommended that [she] apply." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. AAA, ECF No. 35-8, at GWU 003178. Other evidence in the record suggests that this was not the only time Plaintiff was expressly advised of the means to apply for accommodation of a disability. *See, e.g.*, Def.'s Mot. for Summ. J., Ex. BB, ECF No. 34-32 (containing November 19, 2015, email from Defendant's director of Graduate Medical Education entitled "Request for ADA Accommodation" and directing Plaintiff to OEEO "[f]or information about an accommodation"). Plaintiff does not dispute receiving the November 19, 2015, email regarding ADA accommodations. *See* Def.'s Stmt. ¶ 626; Pl.'s Resp. to Def.'s Stmt. ¶ 626.

The record also contains a copy of Defendant's University Policy on Equal Opportunity, stating it was last amended in 2011, as well as 2014 and 2015 editions of Defendant's Resident Manual—all three of which direct applicants for accommodation of a disability to contact the OEEO. Def.'s Mot. for Summ. J., Ex. A, ECF No. 34-3 (Decl. of Lisa A. Catapano, M.D., Exs. #5-#7). In her response to Defendant's statement of material facts in support of its motion, Plaintiff does not dispute the language in the University Policy on Equal Opportunity. Def.'s Stmt. ¶¶ 60, 62; Pl.'s Resp. to Def.'s Stmt. ¶¶ 60, 62. Plaintiff also does not dispute that her Resident Agreements signed in 2014 and 2015 incorporated the respective copies of the Resident Manual, nor that the Manuals contained the aforementioned language. *See* Def.'s Stmt. ¶¶ 49, 57; Pl.'s Resp. to Def.'s Stmt. ¶¶ 49, 57. She instead argues that the Resident Manuals' language on accommodation of a disability does not reflect Defendant's "adopted policy and practice." Pl.'s Resp. to Def.'s Stmt. ¶ 57.

In her reply to Defendant's opposition, Plaintiff suddenly alleges with specificity that she visited the OEEO on September 17, 2015. Pl.'s Reply at 3-4 (citing, e.g., Pl.'s Additional Material Facts, ECF No. 37, ¶ 1017). She argues that that office "directed her to take FMLA leave as an accommodation rather than [a] modified schedule under [the ADA]." *Id.* at 4 (citing, e.g., Pl.'s Additional Material Facts, ECF No. 37, ¶¶ 1017-18); *see also id.* at 9. Plaintiff cites facts that she submitted in response to Defendant's Motion for Summary Judgment. In its own response to Plaintiff's facts, Defendant again hotly contests the notion that Plaintiff ever visited the OEEO to request an accommodation and asserts that, even if she did, the portion of Plaintiff's declaration that she cites in support does not establish that "any such visit was for the purpose of inquiring about whether Plaintiff was qualified for a disability or requesting a reasonable accommodation." Def.'s Resp. to Pl.'s Assertion of Additional Material Facts Allegedly Requiring Jury Trial, ECF No. 42-1, ¶ 1017.

Assuming that the Court would rely on Plaintiff's declaration,[5] the information that she supplies there does not support her argument. The declaration avers only that Plaintiff asked the OEEO whether "they knew of any policies to protect residents who needed time off for medical leave. They stated that I should apply for Family Medical Leave Act (FMLA) leave." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 35-2 (Decl. of Dr. Stephanie Waggel, M.D., ¶ 98) ("Waggel Decl."). While no magic words are necessary, Plaintiff's alleged conversation with OEEO staff falls well short of a request for reasonable accommodation of a disability; otherwise, any inquiry about medical leave, presumably under the FMLA, could automatically be deemed a

---

[5] Because the Court ultimately does not need to rely on that declaration, the Court need not deal here with Defendant's Motion to Strike portions thereof.

request for accommodation under the ADA. Plaintiff cites no authority in support of such an expansive proposition.[6]

Rather, Plaintiff simply points to language in Defendant's OEEO form for requesting a medical accommodation that purportedly "corroborates [the aforementioned alleged] advice because it refers to FMLA leave as an accommodation." Pl.'s Additional Material Facts, ECF No. 37, ¶ 1018. But Plaintiff misconstrues the accommodation form. The accommodation form in fact asks whether the requestor is "eligible for and/or using leave under the" FMLA. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. CCC, ECF No. 35-8. That form says nothing to the effect that FMLA leave is an accommodation, nor that the answer to the FMLA question amounts to a request for FMLA leave as an accommodation under the ADA. Most importantly, Plaintiff does not ever claim that she submitted this one-page form. *Cf. Davis*, 26 F. Supp. 3d at 114-15 (finding that employee did not satisfy prima facie case where he submitted ADA accommodation request form but did not specify accommodation sought).

Plaintiff has not discharged her burden to show that she asked the OEEO for reasonable accommodation of a disability.

### 2. Request Through Defendant's Employees Outside of Its Office of Equal Employment Opportunity

Plaintiff also alleges that she lodged accommodation requests with various of Defendant's employees outside of the OEEO and its established procedure. It is not clear that the Court need

---

[6] The Court has found some authority for the notion that "a request for FMLA leave may qualify, under certain circumstances, as a request for reasonable accommodation under the ADA." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156-57 (3d Cir. 2017) (citing 29 C.F.R. § 825.702(c)(2)). But the Third Circuit has adopted a different test for requesting a reasonable accommodation under the ADA—a test that arguably has a lower threshold for a valid request. *See id.* at 157 (indicating that requestor need only have "requested an accommodation *or assistance*" (emphasis added)). Moreover, in *Capps*, the employer approved of the FMLA leave, obviating a decision as to whether the FMLA request in fact qualified as a request for ADA accommodation. *See id.* Likewise in this case, the Court is not aware of any request by Plaintiff for FMLA leave that Defendant denied.

even consider such informal requests. Circuit precedent does not offer a definitive standard for finding that an informal request amounts to an ADA request for reasonable accommodation. Nor is the Court persuaded that this case falls within the rather abstract guideline of a "case[ ] where the plaintiff's need for an accommodation is so apparent that the defendant must offer one regardless of whether the plaintiff has requested it." *Chenari*, 847 F.3d at 748 (citing *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269-70 (D.D.C. 2015) (requiring accommodation of "obviously disabled inmate" even if no request were made)). Plaintiff does not claim that she lacked the capacity to make a request for accommodation of a disability. Nor is it otherwise "obvious" to the Court that Plaintiff should be excused from asking through Defendant's established channel, the OEEO. But, in an abundance of caution, the Court shall consider in any case whether Plaintiff requested reasonable accommodation of her alleged disability through informal channels outside of the OEEO, and if she did, whether such request was denied.

Perhaps the best-defined statement of her purported reasonable accommodation request before surgery is as follows: "Consistent with a note Dr. Jarrett provided in advance of scheduling surgery, Plaintiff sought an accommodation by asking for two (2) weeks off for the surgery, two (2) weeks light duty, and set days in advance where she could schedule follow-up appointments with her doctors." Pl.'s Stmt. ¶ 21 (citing Waggel Dep. 59:6-12, 68:21-69:5; Pl.'s Mot. for Partial Summ. J. as to Counts I & II, Ex. D, ECF No. 32-4 (Claimant's [sic] Am. Resp. to Pl.'s [sic] Interrogs. No. 5, 8-10, & 15, at Interrog. 9); Pl.'s Mot. for Partial Summ. J. as to Counts I & II, Ex. X, ECF No. 32-4, at MFA 0001-0003).

Defendant argues that even if Plaintiff did make these requests, they do not qualify as requests under the ADA. *See* Def.'s Resp. to Pl.'s Stmt. ¶ 21 (denying contact with OEEO). Dr. Lisa Catapano, Program Director for the Psychiatry Residency Training Program, and presumably

any others to whom Plaintiff directed her requests that worked outside of OEEO, "had no authority to grant formal accommodation under ADA pursuant to a claim of disability or need for leave." *Id.* ¶ 22; *see also* Pl.'s Stmt. ¶ 3; Def.'s Resp. to Pl.'s Stmt. ¶ 3 (Dr. Catapano's role). As discussed above, Defendant had established a process for reasonable accommodation requests pursuant to the ADA and made that process known to Plaintiff. Def.'s Resp. to Pl.'s Stmt. ¶ 22. Defendant's argument directly raises the issue of whether Plaintiff's informal requests, if any, through channels other than those Defendant established pursuant to the ADA, nevertheless qualify as valid channels for directing reasonable accommodation requests under the ADA. But the Court need not decide that issue.

Rather, Plaintiff is unable to discharge her burden to show that one of those informal requests was even made, and, as to the others, that Defendant denied them. First, the parties do not dispute that Plaintiff, or her doctor, made some kind of request for leave for the surgery itself. *See* Pl.'s Additional Material Facts, ECF No. 37, ¶ 994 (referring to note from Plaintiff's doctor and Plaintiff's corresponding request); Def.'s Resp. to Pl.'s Assertion of Additional Material Facts Allegedly Requiring Jury Trial, ECF No. 42-1, ¶ 994 (acknowledging doctor's note). Moreover, there is no dispute that Plaintiff received her two-weeks' leave. *See* Waggel Dep. at 56:10 ("Nobody ever said I wasn't allowed [time off for surgery]."); Pl.'s Reply at 7 ("Defendant ultimately provided Plaintiff two weeks off for her surgery."). This satisfied the first prong of her informal request for accommodation. Any difficulties that she had in scheduling that leave are disputed and immaterial. *Compare* Pl.'s Stmt. ¶ 23 (referring to logistical challenges), *with* Def.'s Resp. to Pl.'s Stmt. ¶ 23 (indicating that one of Plaintiff's supervisors "worked extensively to coordinate Plaintiff's ongoing training with her surgery leave").

Turning to Plaintiff's second alleged request, for light duty after surgery, Defendant indicates that Plaintiff was indeed, upon her return, "scheduled for the night shift because it was expected to provide lighter than normal duty." Def.'s Resp. to Pl.'s Stmt. ¶ 46(a) (citing Def.'s Mot. for Summ. J., Ex. C, ECF No. 34-7 (Decl. of Jason Emejuru, M.D., ¶¶ 36-37, 51)). Plaintiff argues that she did not end up being on lighter duty, for "the Program instead assigned Dr. Waggel to grueling day through night shifts without backup that violated [national standards] to make up for lost time." Pl.'s Reply at 7 (citing Pl.'s Additional Material Facts, ECF No. 37, ¶ 1008; Waggel Decl. ¶¶ 14, 63-66, 82-88). Plaintiff misleadingly draws some of her support from an incident outside the two-week light-duty window. *See* Waggel Decl. ¶¶ 82-88. As for the events within the two-week window, Defendant disputes that Plaintiff was given an exceptional work load, but for "one shift with an unexpectedly high patient load." Def.'s Resp. to Pl.'s Assertion of Additional Material Facts Allegedly Requiring Jury Trial, ECF No. 42-1, ¶ 1008. Even crediting Plaintiff's declaration, *arguendo*, she has failed to prove by a preponderance of the evidence that Defendant denied an informal request for light duty.

With regard to the third of her purported requests, Defendant contends that "[t]here is no record that Plaintiff discussed with Dr. [Jason] Emejuru 'set days in advance' for doctors' appointments." Def.'s Resp. to Pl.'s Stmt. ¶ 21. Dr. Emejuru was the chief resident with whom Plaintiff coordinated her program schedule in light of her surgery. Def.'s Stmt. ¶¶ 27, 231-40; Pl.'s Resp. to Def.'s Stmt. ¶¶ 27, 231-40. Plaintiff responds that her "primary care doctor submitted FMLA paperwork for that purpose" of having designated days for doctor's appointments. Pl.'s Reply at 7 (citing Pl.'s Additional Material Facts, ECF No. 37, ¶ 1048; Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. AAA, ECF No. 35-8). But this comment is ambiguous: Did the doctor *state* in the FMLA paperwork that Plaintiff should be given "set days

in advance" for doctors' appointments?  Or did Plaintiff submit the doctor's paperwork along with her own such request?  The portions of the record that Plaintiff offers in support do not appear to answer those questions.  It is not clear that Plaintiff either requested set days in advance or that her doctor submitted FMLA paperwork for that purpose.  Accordingly, there is insufficient evidence to submit to a jury that Defendant denied any "set days" request that Plaintiff made outside of the OEEO channel.

The Court concludes that Plaintiff has not discharged her burden to prove, by a preponderance, that she sought accommodation for a disability and was denied that accommodation. *See Flemmings*, 198 F.3d at 861.  There is insufficient evidence for a finder of fact to conclude that Plaintiff made any requests for accommodation of a disability using Defendant's established OEEO channel.  Even if Plaintiff did make informal requests before surgery via non-OEEO channels, there is insufficient evidence that Defendant denied such requests.  Absent a request that the OEEO facilitate reasonable accommodation, Plaintiff cannot complain that Defendant's efforts to resolve her informal requests were imperfect.

The problems with Plaintiff's purported pre-surgery requests for informal accommodation typify those affecting her further alleged requests after surgery.  *See, e.g.*, Pl.'s Mem. at 4, 16-17 (referring to, *inter alia*, Plaintiff's request for accommodation of therapy appointments and to various complaints upon her return to work).  For example, there is no dispute that Plaintiff sought assistance with schedule arrangements to permit her to attend psychotherapy appointments.  *See, e.g.*, Pl.'s Stmt. ¶ 31 (referring to "work place accommodation" sought, without claiming that she made any OEEO request); Def.'s Resp. to Pl.'s Stmt. ¶ 31 (acknowledging that "Plaintiff spoke with Dr. Catapano about arranging her clinical rotation schedule . . . during September 2015 to assure she could attend regular therapy appointments").  But there is no proof that Plaintiff's

request was denied.  On the contrary, the record reflects that Dr. Catapano obliged.  *See* Def.'s Resp. to Pl.'s Stmt. ¶ 31 ("Dr. Catapano worked hard to make sure [the above-described arrangements] would happen and in that sense attempted to 'accommodate' Plaintiff."); Def.'s Opp'n, Ex. HH, ECF No. 36-7 (Dep. of Lisa Catapano at 109:15-110:5).  Upon review of the briefing, the Court finds that Plaintiff has not discharged her burden to show, by a preponderance, that Defendant denied this or any other informal, post-surgery requests for accommodation.

Again, Plaintiff has not proven that she ever asked the OEEO for reasonable accommodation of a disability.  A factfinder's assessment of the nature and scope of pre-surgery requests via non-OEEO channels may affect its assessment of any accommodations informally sought afterwards.

### B.  Other Alleged Disability Discrimination

As discussed above, Plaintiff alleges not only that Defendant failed to accommodate Plaintiff's disability but that Defendant took a variety of adverse employment actions on the basis of that disability.  Pl.'s Mem. at 6.  She identifies six specific instances in which she allegedly experienced discrimination: "a decision not to promote Plaintiff, a decision to terminate Plaintiff, a decision to sabotage Plaintiff's efforts to transfer to another program, as well as other lesser adverse employment actions related to job assignments, vacation and training."  *Id.* at 6, 23-28. Plaintiff cites a laundry list of statutory provisions and implementing regulations that could apply to these activities.  *Id.* at 21-23 (citing 42 U.S.C. § 12112(b)(1), (3)-(7); 29 C.F.R. § 1630.4(a)(1)(ii), (iv)-(vii), (ix)).  Nowhere does she make clear which specific statutory or regulatory requirement is violated by each adverse action.

"Putting aside the issue of reasonable accommodation, the two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226

(D.C. Cir. 2008). Plaintiff may establish her claim by either direct or circumstantial evidence of discrimination. *Brady v. Livingood*, 456 F. Supp. 2d 1, 6 (D.D.C. 2006) (assessing racial discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII")), *aff'd sub nom. Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008). "While courts have not precisely defined what constitutes 'direct evidence,' it is clear that 'at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself.'" *Brady v. Livingood*, 456 F. Supp. 2d at 6 (quoting *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996)). Indeed, "[d]irect evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*." *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (quoting *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 340 n.2 (D.D.C. 2005)) (internal quotation marks omitted).

Plaintiff does not expressly argue that there is direct evidence of discrimination, though Plaintiff cites three times Dr. James Griffith's comment that he was "agnostic" as to whether Plaintiff's illness was diagnosed as cancer. Pl.'s Mem. at 1, 3, 16 (citing Pl.'s Stmt. ¶ 94). This is a stray comment. The record shows that Dr. Griffith was not responsible for many of the decisions during Plaintiff's tenure in the program, but even if he is considered a decisionmaker, this comment during a deposition was unrelated to Defendant's decision-making process. *See* Pl.'s Mot. for Partial Summ. J. as to Counts I & II, Ex. N, ECF No. 32-4 (Dep. of James Griffith at 34:12-35:6). Notwithstanding those deficiencies, Dr. Griffith's comment would require some inference that, by not taking a position as to whether Plaintiff had cancer, he intended to discriminate against her. Summary judgment for Plaintiff is inappropriate where the discriminatory import of a comment requires an inference. *Cf. Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576-77 (D.C. Cir. 2013) (per

curiam) (reserving for factfinder an assessment of the credibility of direct evidence of discrimination).

Finding no direct evidence, the Court historically would evaluate whether Plaintiff makes out a prima facie case under *McDonnell Douglas* that each of the Defendant's adverse actions was attributable to an alleged disability, in violation of a specific statutory or regulatory requirement. *See McDonnell Douglas Corp.*, 411 U.S. at 802 (Title VII context). But *Adeyemi* has made clear that, at least in this Circuit, "the prima-facie-case aspect of *McDonnell Douglas* is irrelevant [in the ADA context] when an employer has asserted a legitimate, non-discriminatory reason for its decision—as an employer almost always will do by the summary judgment stage of an employment discrimination suit." *Adeyemi*, 525 F.3d at 1226; *see also Brady v. Office of Sergeant at Arms*, 520 F.3d at 494 (Title VII context). Rather, the Court shall proceed to Defendant's rationale for each of the alleged adverse actions. If the rationale is legitimate and non-discriminatory, then the Court shall consider Plaintiff's rebuttal argument that Defendant's purported rationale is pretextual. *See Adeyemi*, 525 F.3d at 1226.

The Court finds that, in general, Plaintiff's six areas are rife with disputes, due in part to briefing reminiscent of ships passing in the night. At least some of those disputes are not genuine, reflecting instead Plaintiff's habit of mischaracterizing the record. Resolving any remaining genuine, material disputes would require a finder of fact first to sort out Plaintiff's and Defendant's divergent narratives of what transpired between them.

The Court shall illustrate the factual discrepancies by reference to one of Plaintiff's six areas, vacation time. Issues with vacation time can be sufficiently isolated from the history of the parties' interactions to 1) succinctly describe Plaintiff's argument—without concluding whether she establishes a prima facie case of discrimination; 2) evaluate Defendant's purported rationale;

and 3) if that rationale is legitimate and non-discriminatory, address Plaintiff's rebuttal, if any. The Court need not proceed further to conclude that Plaintiff is not entitled to summary judgment as to her disability discrimination claims.

> Plaintiff's claim regarding vacation time consists in entirety of the following:
>
> GWU treated her differently in making decisions about her vacation. On October 22, 2015, Plaintiff was informed that, because she took three days off (which were approved at the start of her rotation) and was scheduled to take a licensing exam the following week (as suggested by Plaintiff's Chief Resident), Plaintiff would have to repeat the entire month's rotation.

Pl.'s Mem. at 28 (citing Pl.'s Stmt. ¶ 48). Defendant does not specifically address vacation time in its brief. But in its response to Plaintiff's statement of facts, Defendant flatly denies an almost verbatim version of the second sentence, referring for support to its response to another of Plaintiff's paragraphs. Def.'s Resp. to Pl.'s Stmt. ¶ 48 (citing *id.* ¶ 36). At the cross-reference, Defendant explains that an error had been made regarding Plaintiff's request for administrative leave for a licensing exam in October 2015. Plaintiff's attending physician at an off-site hospital had signed off on her request for four days of such leave, which was two more than Defendant's program permitted for such exams, and the program had incorrectly processed Plaintiff's application before Dr. Catapano caught the issue. *Id.* ¶ 36. Defendant's associate program director gave Plaintiff a couple of options to mitigate any effects of having less administrative leave time for the exam than Plaintiff had been planning. *Id.* One of those options was to use two days of vacation time in addition to two days of administrative leave. *Id.* But the associate director made clear to Plaintiff that taking this additional time may have consequences because her "attendance at PHP [her current clinical rotation] this month puts you in jeopardy of failing the rotation, based solely on the number of days worked/not worked." *Id.* (alteration in original) (internal quotation marks omitted).

There appears to be some misalignment between Defendant's explanation for the October 2015 incidents and Plaintiff's argument that she experienced discrimination. First of all, Plaintiff refers to three days off, and Defendant's explanation involves two and four. Plaintiff's explanation also appears to refer to days already taken off, while Defendant's refers to upcoming days off, as well as the associate program director's comment about past days off. It also is unclear whether Plaintiff misinterpreted the associate director's comment that she would be *at risk* of needing to repeat the rotation; this is different than Plaintiff's intimation that she *certainly* would be required to repeat.

Notwithstanding these ambiguities, Defendant offers a cogent, non-discriminatory explanation for a scenario involving Plaintiff's vacation time during October 2015. If Plaintiff were able to show that Defendant is referring to the wrong scenario, that Defendant is misstating the facts of this scenario, or that Defendant's explanation is otherwise illegitimate, and that Plaintiff has in fact described a situation involving an adverse employment action based on her alleged disability, then the Court would find that Plaintiff discharged her burden on rebuttal. Plaintiff might demonstrate that Defendant acted under pretext by showing that Defendant diverged from its own policy, or that other residents were treated more favorably.

But Plaintiff does nothing of the sort. Rather, she contends only that the associate program director's email makes clear that "absences, not performance, were the real cause of alleged deficiencies." Pl.'s Reply at 11. Absences were no doubt implicated in the October 22, 2015, incident, but Plaintiff has not shown that Defendant's behavior involved anything other than an administrative snafu. In other words, Plaintiff fails to demonstrate that Defendant's rationale for its handling of the vacation time incident conceals unlawful discrimination.

Even if Plaintiff had made more of a showing, her argument about vacation time is ultimately a non-issue. It appears that Plaintiff did not end up taking vacation time *or* administrative leave during the late October 2015 period at issue. Defendant has submitted evidence that Plaintiff applied for FMLA leave for a period encompassing both the study time that she sought as well as the exam itself. Def.'s Resp. to Pl.'s Stmt. ¶ 36 (citing Def.'s Opp'n, Ex. KK, ECF No. 36-10).[7] Plaintiff never argues that she did not take the exam. Nor does she allege that she failed the rotation. Accordingly, Defendant did not take any adverse action related to vacation time in which it could have discriminated against Plaintiff. *See, e.g.*, *Diggs v. Potter*, 700 F. Supp. 2d 20, 42 n.13 (D.D.C. 2010) (finding "no adverse action" in light of defendant's remedial activities); *cf. Hutchinson v. Holder*, 668 F. Supp. 2d 201, 215 (D.D.C. 2009) (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)) (recognizing in Title VII case that "not everything that makes an employee unhappy is an actionable adverse action" (internal quotation marks omitted)). It is unnecessary to reach Defendant's insistence on judicial deference to academic institutions. *See* Def.'s Opp'n at 20-25.

The Court also need not proceed to Defendant's other adverse actions allegedly attributable to discrimination. The Court has read the briefing regarding such actions. The issues with Plaintiff's vacation time claim are emblematic of those plaguing her other alleged instances of discrimination, due to a lack of clarity and some factual disputes. Accordingly, Plaintiff has not shown that she is entitled to summary judgment on her disability discrimination claim.

---

[7] Defendant's exhibit regarding FMLA leave shows that Plaintiff requested the leave, but it does not include an indication whether the leave request was certified upon receipt of documentation from Plaintiff. *See* Def.'s Opp'n, Ex. KK, ECF No. 36-10, at GWU 003185. Defendant elsewhere claims that Plaintiff did in fact receive FMLA leave from October 26-30, 2015. Def.'s Resp. to Pl.'s Stmt. ¶ 35(a) (citing Def.'s Mot. for Summ. J., Ex. O, ECF No. 34-19 (Decl. of Kimberly Vanlewen, ¶ 20)). Plaintiff does not dispute that this leave request was approved. *See* Def.'s Stmt. ¶ 531; Pl.'s Resp. to Def.'s Stmt. ¶ 531.

***

In the course of preparing this Memorandum Opinion, the Court considered each of Plaintiff's arguments. The Court has attempted to respond to each of the pertinent allegations by Plaintiff. Any allegation that it has not expressly addressed is without merit.

When viewing the record in the context of Defendant's Motion for Summary Judgment, the Court discerns a much clearer and more specific picture of the facts of this case. That picture is based on Plaintiff's admissions of many of Defendant's material facts, and her non-genuine or immaterial disputes as to other such facts. In a Memorandum Opinion that also will issue today, the Court shall grant Defendant's Motion for Summary Judgment, notwithstanding disputes discussed in this Opinion, because Defendant focuses on the undisputed material facts that justify its actions pursuant to the relevant standards.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's [32] Motion for Partial Summary Judgment as to Counts I & II.

A separate Order accompanying this Memorandum Opinion concerns Plaintiff's Motion, as well as Defendant's [34] Motion for Summary Judgment and [41] Motion to Strike Portions of the Declaration of Dr. Stephanie Waggel, M.D.

Dated: November 9, 2018

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge